Terry Lynn DUFF; Rose Ella Weese, mother and next friend of Dennis Wayne Weese, a minor; Rose Ella Weese, an individual; and Duane Henry Weese, Costello Means, father and next of kin of Merle C. Means, deceased; and Max McCall, guardian of the estate of Jimmy Shideler, a minor, Appellants,

v.

ALLIANCE MUTUAL CASUALTY COMPANY, a corporation, Appellee.

No. 6723.

United States Court of Appeals Tenth Circuit.

Nov. 7, 1961.

Howard K. Berry, Sr., Oklahoma City, Okl. (Collins, Moore & Sellers, Sapulpa, Okl., Green & Feldman, Tulsa, Okl., Jack B. Sellers, Drumright, Okl., Charles A. Shadid, Oklahoma City, Okl., Wallace & Wallace, Sapulpa, Okl., Berry & Berry, Oklahoma City, Okl., were with him on the brief), for appellants.

Dan A. Rogers, Tulsa, Okl. (Philip N. Landa, Tulsa, Okl., was with him on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and BREITENSTEIN, Circuit Judges.

LEWIS, Circuit Judge.

This is an action brought by the Alliance Mutual Casualty Company under the Declaratory Judgment Act, 28 U.S. C.A. § 2201, to determine that company's rights and duties under a policy of automobile insurance issued to one Marvin O'Kelley as the name insured. The determinative question is whether Terry Lynn Duff, driver of the insured vehicle at the time of an accident giving rise to claims of liability brought by the other appellants, was driving the insured car with the implied permission of the named insured, Marvin O'Kelley. The trial court held that Duff's use of the vehicle was without the permission of the named insured and that the company had no con-

·tractual obligation to defend the actions pending against Duff. This appeal challenges such finding and our review is limited to a determination of whether the record indicates the finding to be clearly erroneous. Rule 52, F.R.Civ.P., 28 U.S. C.A.

The subject policy designates as insureds under the contract:

· (1) The named insured and any resident of the same household,

(2) Any other person using such automobile, provided the actual use thereof is with the permission of the named insured.

■ The insured vehicle was a 1955 Pontiac and was one of two automobiles available for family use in the O'Kelley household. On February 21, 1960, the Pontiac was driven to work by Pete O'Kelley, a son of the named insured. It is undisputed that Pete had authority to take the car as need required and that his use was permissive upon the particular occasion. While at work, Pete loaned the vehicle to Duff who, as indicated, was involved in an accident. The parties agree that Duff had the actual and unqualified permission of the son Pete to drive the car but did not have the actual permission of the named insured, Marvin O'Kelley. Appellants contend that the intimate relationship between the O'Kelley and Duff families, viewed in the light of the Oklahoma Safety Responsibility Act, 47 Okl.St.Ann. §§ 501–542, makes a finding of implied consent mandatory under the evidence and requires a reversal of the trial court's judgment.

For at least five or six years prior to the subject incident Duff and Pete O'Kelley had been intimate friends, neighbors and schoolmates. They had, to a great degree, enjoyed the free run of each other's homes and had shared the many associations of teen-age boys. After obtaining their drivers' licenses at age 16 they were each allowed use of their re-

spective family cars and each boy had allowed the other to drive upon frequent occasions. The close friendship continued through the years as evidenced by the fact that Pete O'Kelley was best man at Duff's wedding.

On February 21, 1960, Duff was home from a college that he was attending at Stillwater, Oklahoma. On that afternoon he visited at work with Pete O'Kelley and told Pete that his ride back to Stillwater had disappointed him and asked to borrow the O'Kelley car to hunt up another ride. Pete twice loaned him the car for that purpose. During the second period that Duff was in possession of the car he was involved in the accident premising the controversy.

The testimony of Marvin O'Kelley, owner of the car and named insured, forms the basis for the trial court's finding. Mr. O'Kelley had never discussed with his son Pete the matter of allowing others to drive his car. He had no knowledge of any instance when Pete had loaned the car[1] and did not know that Duff had been given possession of the car upon the day of the accident. He was well aware of the fact that his son and Duff were close friends of several years' standing.

■■ Such testimony is ample evidence to support the judgment. The intimate friendship of the O'Kelley and Duff families does not, as a matter of law, carry with it the implied permission to borrow the family car absent knowledge of the existence of such a practice. And, since the particular purpose for which Duff borrowed the car and the actual use made of the car were not to serve any purpose, benefit, or advantage to either Mr. O'Kelley or his son, the case falls squarely within the rule set forth in Samuels et al. v. American Automobile Ins. Co., 10 Cir., 150 F.2d 221, 223, 160 A.L.R. 1191:

"It has generally been held that where A, the owner of an automo-

1. On one specific occasion about three years prior Mr. O'Kelley had specifically allowed Duff to borrow a pick-up truck.

This was the only instance that the witness could recall of such an incident.

bile, gives general permission to B to use the automobile and B gives permission to C to use the automobile solely for C's purpose, benefit, or advantage, and the automobile is involved in an accident while being so used by C, such use is not with the permission of the named insured."

■■ We find no merit in appellants' contention that the subsequent passage of the Oklahoma Safety Responsibility Act, 47 Okl.St.Ann. §§ 501–542, requires a re-examination of Samuels or a modification of the clear limitation placed upon coverage in the wording of the policy of insurance. The act does of course reflect a public policy to afford financial protection to injured parties by requiring insurance in certain instances from the operators of motor vehicles.[2] But the act does not provide for compulsory insurance from all drivers and the subject policy was not purchased or issued with the compulsion of the act. The policy was voluntarily carried by Mr. O'Kelley. In such case the Oklahoma Supreme Court considering a case of non-coverage, has held, U. S. Fidelity & Guaranty v. Walker (Okl.1958), 329 P.2d 852, 853:

"A policy of automobile liability insurance, voluntarily carried by an operator who has never been required to furnish proof of financial responsibility under provisions of the safety responsibility act, and not certified as such proof, is not

'required by said law' and the insurer is not precluded from relying on policy defenses because of the provisions of 47 O.S. 1951, § 521."

The judgment is affirmed.

---

2. The Act provides, 47 Okl.St.Ann. § 521:
"Requisites of motor vehicle liability policy
"(a) A 'motor vehicle liability policy' as said term is used in this Act shall mean an owner's or an operator's policy of liability insurance, certified as provided in Section 19 or Section 20 as proof of financial responsibility, and issued, except as otherwise provided in Section 20, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.
"(b) Such owner's policy of liability insurance:
I. shall designate by explicit description or by appropriate reference all motor

vehicles with respect to which coverage is thereby to be granted; and
II. shall insure the person named therein and any other person, as insured, using any such motor vehicle or mother vehicles with the express or implied permission of such named insured, against loss from liability imposed by law for damages arising out of the ownership, maintenance * * *."
Compare the broader provisions of North Carolina which require the policy to:
"Insure as insured the person named, and any person using or responsible for the use of the motor vehicle with the permission, express or implied, of the named insured, *or any other person in lawful possession.*" (Emphasis added.)