372 A.2d 478

**Rosemarie BELAS, a minor, in her own right and Rose Belas, her mother, as parent and natural guardian of Rosemarie Belas, Individually,**

**v.**

**Millicent MELANOVICH and Craig Calabria,**

**v.**

**STATE FARM INSURANCE COMPANY, Appellant, and the Aetna Life and Casualty Company.**

Superior Court of Pennsylvania.

Argued Nov. 25, 1975.

Decided March 31, 1977.

314

Frank S. Kelker, Rochester, with him Kelker & Kelker, Rochester, for appellant.

Lee E. Whitmire, Jr., Beaver Falls, with him Whitmire & Mannix, for appellee.

SPAETH, Judge:

This appeal arises from an attachment execution proceeding on a judgment recovered in a trespass action brought by Rosemarie Belas, a minor, and Rose Belas, her mother, against Craig Calabria, in which State Farm Mutual Automobile Insurance Company and The Aetna Life and Casualty Company are named as garnishees. A jury returned a verdict of $32,180.30 against both garnishees; by agreement this was molded so that it was against State Farm for $25,000 and against Aetna for the balance. The lower court denied State Farm's motion for judgment n. o. v., and State Farm has appealed.[1]

---

[1]. The lower court also denied Aetna's motion for judgment n. o. v. but Aetna has not appealed, although it has appeared as an appellee to argue that the denial of State Farm's motion was proper. Thus the issue of Aetna's liability is not before us, except in the sense that if we reverse, Aetna will not be entitled to charge against its liability any liability on the part of State Farm.

## I

On November 4, 1967, Rosemarie Belas was a passenger in an automobile driven by Craig Calabria. When Craig drove into a tree, Rosemarie was hurt. She and her mother sued Craig, and a jury awarded Rosemarie $30,000 and her mother $2,180.30.

In the ensuing attachment execution proceeding, Aetna's liability (which, as just mentioned, is not before us) arose from the fact that it insured Craig's father, John Calabria, whereas State Farm's liability arose from the fact that it insured Millicent Melanovich, the owner of the automobile that Craig was driving. More specifically, State Farm's policy with Miss Melanovich provides that State Farm will "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons . . . ." The "insured" is defined as:

(1) the named insured [Miss Melanovich]

(2) . . .

(3) . . .

(4) any other person while using the owned automobile, provided the operator and the actual use of such automobile are with the permission of the named insured . . . and are within the scope of such permission.

Craig was "any other person . . . using the owned automobile." The question, therefore, was whether he had used it "with the permission" of Miss Melanovich.

The evidence on this question was substantially without conflict. On November 4, 1967, Miss Melanovich was in the hospital. She therefore asked her nephew, Samuel Melanovich, to use her automobile to perform certain errands for her. After Samuel had performed the errands, he asked his aunt if he might borrow her automobile for his personal use that evening; he told her he might go to a "social" at the high school or to a local restaurant. Samuel did not tell his aunt that he might let someone else use the automobile; on the four or five other occasions when he had borrowed the

automobile, he had not let anyone else use it. Miss Melanovich told her nephew that he might borrow her automobile, on condition, however, that since he only had a junior license, he return home with it before midnight. Other than this, she did not "lecture" him on the use of the automobile because she had confidence in him. Samuel drove the automobile to a local restaurant, where he met his friend, Craig Calabria. Craig asked if he might use the automobile to visit his friend, Rosemarie Belas. Samuel loaned Craig the automobile, on condition that he return it before midnight. Craig picked up Rosemarie and drove her to a restaurant; the accident in which Rosemarie was hurt occurred on their way back from the restaurant.

At the conclusion of this evidence, State Farm moved for a directed verdict. The lower court denied the motion, and submitted the case to the jury, instructing the jury to return with its verdict certain special findings, which the jury did as follows:

1. Did Craig Calabria have the implied permission of Millicent Melanovich to operate her car? Yes.
2. Did Craig Calabria have permission or reasonably believe that he had permission of the owner? Yes.
3. Was there any limitation placed on Craig Calabria's use of the automobile? No.
4. Did Craig Calabria operate the automobile outside the scope of his permission? No.

As already mentioned, the jury's verdict was against State Farm, and State Farm's subsequent motion for judgment n. o. v. was denied.

## II

At first impression, the case would seem to present no difficulty. State Farm cannot be liable unless its insured, Miss Melanovich, gave Craig Calabria "permission" to use her automobile. Is it not plain that she did not? She never even spoke to Craig, and there is nothing to suggest that she had any idea that he might be using her automobile.

–A–

Some cases are indeed to the effect just suggested. Thus it has been held that "permission" to use the insured automobile is a personal right of the named insured, which cannot be delegated to another (Samuel Melanovich); to be effective, "permission" must come direct from the named insured (Miss Melanovich). *Howell v. Accident & Casualty Ins. Co.*, 32 Tenn.App. 83, 221 S.W.2d 901 (1949); *Fox v. Crawford*, 80 N.E.2d 187 (Ohio App.1947).

Such cases may be regarded as an application of the general rule that

> the permission given by the named insured to another to use the named insured's car does not authorize the permittee [Samuel Melanovich] to allow a third party to use the car, and that if the permittee does allow a second permittee [Craig Calabria] to use the car, such use is not "with the permission of the named insured" as these words are used in the omnibus clause.

7 Am.Jur. (2d), Automobile Insurance, § 116.

*And see Gillen v. Globe Indemnity Co.*, 377 F.2d 328, 330 (8th Cir. 1967); *Krebsbach v. Miller*, 22 Wis.2d 171, 175, 125 N.W.2d 408, 410 (1963).

–B–

Most courts, however, have chosen to soften what has been characterized as "the initial appearance of harshness and rigidity of this general rule." *Gillen v. Globe Indemnity Co., supra*. Their technique has been to examine "the initial grant of permission [in order to determine whether it] was broad enough to include an implied grant to the permittee [Samuel Melanovich] to give another [Craig Calabria] use of the automobile and thus render the latter an additional insured under the omnibus clause." 7 Am.Jur. (2d), *supra; And see generally* Annot., Omnibus Clause of Automobile Liability Policy As Covering Accidents Caused By Third Person Who Is Using Car With Consent of Permittee of Named Insured, 4 A.L.R.3d 10 (1965).

Among such courts is our Supreme Court. The initial decision is *Brower, to use v. Employers' Liability Assurance Co., Ltd.*, 318 Pa. 440, 177 A. 826 (1935). There the owner of the automobile had given it to a mechanic for repairs, and the mechanic, while using it for his own purposes, had an accident. Thus there was no re-giving of the automobile, as here; instead, the issue was whether the mechanic had acted outside the scope of the owner's permission. The decision is nevertheless in point, for in deciding whether the mechanic had acted outside the scope of the owner's permission, the Court examined the circumstances within which the permission had been given. Said the Court:

For liability to attach in any event under an omnibus clause of this type, the operator must be shown to have obtained possession of the car lawfully and with the permission, express or implied of the named assured; if there is a complete lack of permission to use the car for any purpose, the operator is clearly not within the coverage of the policy: *Morin v. Travelers Ins. Co.*, 85 N.H. 471, 160 A. 482; *Globe Indemnity Co. v. Nodlere*, 69 F. [2d] 955. The necessary permission may be in the form of express or implied affirmative consent or it may result by implication from the relationship of the parties or a course of conduct in which the parties have mutually acquiesced: *Maryland Casualty Co. v. Ronin*, 37 F. [2d] 449; see *Kazdan v. Stein*, 26 Ohio App. 455, 160 N.E. 506, affirmed in 118 Ohio 217, 160 N.E. 704.

*Id.* at 444, 177 A. at 828.

It will be observed that application of this doctrine of implied permission may prove difficult. Once proof of a single specific fact is no longer required—did or did not the named insured tell the driver he could use the automobile?—the way is opened for varying interpretations of similar patterns of facts. Thus in *Gillen v. Globe Indemnity Co., supra*, the court, after reaching its decision, said:

With this ruling, however, we must add a word of caution. The decisions in this area often appear to be delicately balanced on the peculiar facts of the individual cases. The

change of a few facts might be enough to imply consent in the named insured. Therefore, this case, as all cases in this area, must be limited to the facts presented. The addition or subtraction of any one of the many factors present could easily have changed the holding herein. *Id.* at 333.

The inherent difficulty thus remarked upon, of interpreting similar, but not identical, patterns of facts, is considerably enhanced by the presence of conflicting considerations of social policy.

In every case, someone (Rosemarie Belas) will have been hurt, and money will be available (from State Farm) to make at least partial compensation. In these circumstances, some courts may feel an impulse to award compensation. One court, indeed, has suggested that "[i]n establishing [its] policy [a court] may decide to go farther than we did and rule that *any* permittee has the protection of such an omnibus clause." *Gillen v. Globe Indemnity Co., supra* at 333 (emphasis added). *Krebsbach v. Miller, supra,* approaches being such a decision, for it may be read as holding that the second permittee (Craig Calabria) will be considered to have the named insured's implied permission to use the automobile unless the proof shows that the named insured *specifically forbade* the first permittee (Samuel Melanovich) to loan the automobile to anyone else. In the course of its decision the court in *Krebsbach* quotes with approval one case observing that "in this automobile age [it is] a common thing for an automobile owner . . . to loan [his] car . . . .," *Indiana Lumbermens Mutual Insurance Co. v. Janes,* 230 F.2d 500, 503 (5th Cir. 1956), and another case to the effect that "[i]f an insured automobile is left by the owner with someone for general use, and he in turn permits its use by another, the use is deemed to be with the permission of the owner," *Utica Mutual Insurance Co. v. Rollason,* 246 F.2d 105, 110 (4th Cir. 1957).

Other courts, however, may not share such an impulse to award compensation but may instead be of the opinion that to find implied permission too readily will unfairly expand

the risks of insurance companies. Thus in *Cronan v. Travelers Indemnity Co.*, 126 N.J.L. 56, 18 A.2d 13 (1941), the court in denying coverage observed that "[n]either the public nor private interest is served by laxity in measuring the insurer's liability in accord with the terms of the contract as understood by a person of reasonable intelligence," *id.* at 15; and in *Duff v. Alliance Mutual Casualty Co.*, 296 F.2d 506 (10th Cir. 1961), the court, while recognizing a public policy to afford financial protection to injured persons as reflected by a statute requiring automobile insurance, nevertheless emphasized that the insurance policy in question had been voluntarily carried by the named insured, and held that under that policy no coverage was afforded. *And cf.* the discussion in *Brower, to use v. Employers' Liability Assurance Co., Ltd., supra*, 318 Pa. at 444–447, 177 A. at 828–829.

–C–

It is impossible to reconcile all of the cases. Instead, one must sort out the several principles illustrated by them, and then adopt that line of reasoning found most persuasive.

A court cannot, and should not, be immune from considerations of social policy. It may well be that in a given case such considerations will be decisive. *See, e.g.,* cases cited in *Spallone v. Siegel,* 239 Pa.Super. 586, 591–594, 362 A.2d 263, 267–268 (filed March 29, 1976), *and cf. Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), *with Tobin v. Grossman,* 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969), discussed in *Scarf v. Koltoff,* 242 Pa.Super. 294, 299, 300, 363 A.2d 1276, 1278–1279 (filed September 22, 1976). Nevertheless, in invoking social policy, a court must not lose sight of the legal foundations of the problem before it.

Here, the legal foundations are represented by the doctrine of implied permission. The evidence does not suggest, and none of the parties claims, either that Miss Melanovich gave Samuel Melanovich express permission to loan her automobile to someone else, such as Craig Calabria, or that

she gave express permission to Craig to use it. If Craig is to be found to have had Miss Melanovich's permission to use her automobile, therefore, it can only be on the basis that *implied* in her express permission to Samuel, that he could use it, was the permission to loan it to someone else, such as Craig. Whether there was such an implication is not a question the answer to which turns on considerations of social policy. It is rather an individual, factual question of what Miss Melanovich may reasonably be understood to have meant, when she told Samuel that he could use her automobile; one must look, in other words, not at social policy (should people like Rosemarie Belas be compensated?), but at Miss Melanovich.

That this is what one must do has been consistently held by the decisions both of our Supreme Court and of this court.

In *Beatty v. Hoff*, 382 Pa. 173, 114 A.2d 173 (1955), the question was whether a son had the implied permission of his father to use his father's automobile. After noting that the relationship of father and son was without more insufficient to show implied permission, the Court examined the evidence of a course of conduct in which the father and son had mutually acquiesced. Since a jury had found implied permission, the Court examined that evidence in the light most favorable to the verdict winners, who had been hurt in an accident in which the son had been driving his father's automobile. In this light, the evidence showed that the son had occasionally used his father's automobile. However, "there was no proof whatsoever that its use on such few occasions (or on the night of the accident) was with the father's knowledge." *Id.* 382 Pa. at 179, 114 A.2d at 175. Consequently, there could be no finding of implied consent, and judgment n. o. v. was proper. The Court (Mr. Justice JONES dissenting) quoted from *Kazdan v. Stein*, 26 Ohio App. 455, 160 N.E. 506, affirmed 118 Ohio 217, 160 N.E. 704 (1928), which had been cited in *Brower, to use v. Employers' Liability Assurance Co., Ltd., supra*, as follows:

In *Kazdan v. Stein*, thus cited in the *Brower* case, it is stated: "Whether a consent is express or implied depends upon the conduct of the party whose consent must be had. Whatever may be the act, circumstances, or fact, in order to recover under the terms of the agreement, there must be a connection made with the conduct of the party whose consent, either express or implied, is necessary. Thus there may be acts, circumstances and facts, such as the continued use of the car, but unless they attach themselves in some way to the acts of the party whose consent must be had there can be no implication of consent arising, because consent signifies some fact or circumstance proceeding from the party who must consent in order to make the act valid. In other words, there must be a nexus between the acts and the voluntary action on the part of him who must consent. The implication, in order to have legal significance, must have the element of mutuality, because in implied consent it is just as necessary to show mutuality as it is in express consent, and as to the latter there is no question that a mutuality of agreement must exist. It is just as necessary in implied consent.".

382 Pa. at 177, 114 A.2d at 174.

*Volk v. Cacchione*, 395 Pa. 636, 150 A.2d 849 (1959), is to the same effect, although it does not cite *Beatty*. There too a jury had found implied permission, and the question was whether judgment n. o. v. was proper. A father loaned his automobile to his son, who, at a high school dance in Erie, loaned it to a friend, who was driving it when the accident occurred, some 45 miles away in the State of New York. There was evidence that the son and his friend both worked for the father as apprentice plasterers, that the two boys often went out together socially, and that occasionally, when the son was tired or was teaching his friend to drive, the friend drove the automobile. This evidence was found insufficient to sustain the plaintiff's burden of proving that the father had given his son's friend implied permission to

drive the automobile.[2] Said the Court (with Mr. Justice MUSMANNO dissenting):

At the time of the accident, young DeGeorge [the son] was neither tired, nor was he aiding Cacchione [the friend] to learn to drive, nor were they on a mutual date, nor was young DeGeorge even in the car. Moreover, Cacchione did not drive the car in or around Erie, as had been the extent of his previous use and custom, but drove approximately 45 miles on a pleasure trip into another State. In order to come within the terms of the policy plaintiff would have to prove that Cacchione was permitted by Mr. DeGeorge to use his automobile on this particular night, or for this particular pleasure trip, or would have to prove that Mr. DeGeorge permitted Cacchione to use the automobile for his unlimited personal pleasure and with no younger member of the DeGeorge family present.

395 Pa. at 641–42, 150 A.2d at 852.

In *Exner v. Safeco Insurance Co. of America,* 402 Pa. 473, 167 A.2d 703 (1961), the evidence was found sufficient, and judgment n. o. v. was therefore denied. Factually, *Exner* was more like *Brower* than *Beatty* or *Volk*. A father gave the keys of his automobile to his son, asking him to wax the automobile. The son did wax it, and on the way home had an accident. The issue was whether the father's permission to his son to use the automobile implied the permission to take it outside of Allentown. On the one hand, in the past the son had never used the automobile except on small errands inside Allentown. On the other hand, it was Sunday morning, and the son had reason to believe his father was not interested in having the automobile back until evening.

2. The Court alluded to other evidence, that the father had told his son not to allow anyone else to drive the car, and that he had not known that the friend had ever driven the automobile. This evidence might not have been believed by the jury, however, and, since the issue was whether judgment n. o. v. was proper, in deciding the case the Court did not rely on this evidence. In the same case in an early stage of litigation, the lower court had similarly noted this evidence but, like the Supreme Court, did not rely on it. *Cacchione v. Metropolitan Ins. Co.,* 86 Pa.D. & C. 183, 36 Erie Co.Leg.J. 222 (1953). *See* Annot., 4 A.L.R.3d *supra,* at 90.

The son found the nearest filling station closed, and then went to visit a girl in Jim Thorpe, 37 miles away, but not finding her, drove to a back road and waxed the car. Considering all of the circumstances, the Court held that a jury could find that the son had not exceeded the scope of his father's permission to use the automobile.

From these decisions it will be seen that the critical question will always be whether the named insured said or did something that warranted the belief that the ensuing use was with his consent. There must be "a connection made" with the named insured's own conduct; proof of "acts, circumstances, and facts, such as the continued use of the car", will be insufficient "unless they attach themselves in some way to the acts" of the named insured. *Beatty v. Hoff, supra.* In *Exner*, there was proof of such a connection: had the son been asked whether his father had restricted him to using the automobile inside Allentown, he could reasonably have responded that given his father's conduct in the circumstances, he did not think so. However, in *Brower* the mechanic had no reason to suppose that he was entitled to use the automobile for his personal use; in *Beatty* the son had no reason to suppose that he was entitled to use the automobile; and in *Volk* the son had no reason to suppose that he was entitled to let his friend use the automobile.

Our own decisions are consistent with these principles. In *Helwig v. Esterly*, 205 Pa.Super. 185, 208 A.2d 10 (1965), a father loaned his automobile to his son, who permitted his fiancee to drive it. There was evidence that the father had explicitly instructed his son that he alone could drive the automobile. The trial judge charged the jury to the effect that this explicit instruction did not matter, if the automobile was being used by the fiancee for a purpose that came within the father's instruction when he gave his son permission to use the automobile. The jury found against the father's insurance carrier. Reversing (WRIGHT, J., dissenting), we cited *Volk* and *Beatty* for the proposition that "there must clearly appear a connection either expressly or

impliedly between the person whose consent is necessary and the person who it is contended came within the definition of insured." 205 Pa.Super. at 189, 208 A.2d at 12. "It would be unreasonable to hold that Karl [the son] was privileged to disregard the explicit instruction of his father as to the manner in which he was to use his father's car." 205 Pa.Super. at 190, 208 A.2d at 12. In *Esmond v. Liscio*, 209 Pa.Super. 200, 224 A.2d 793 (1966), on the other hand, there was proof of a connection with the named insured. A father was asked by his son if he and a friend, one Robert Spinelli, might borrow the father's automobile. The father agreed, provided the son did not drive, since his license had been suspended. The son and Spinelli thereupon proceeded to a tavern. There the son gave the keys to another friend, one Judd Youkers, and the accident occurred while Youkers was driving. Examining all of the evidence, we concluded that the father's permission had been given in such circumstances as to entitle the son to believe that he could let any licensed driver—not just Spinelli—drive the automobile. Judgment based on a finding of coverage was therefore affirmed. *Helwig* was distinguished on the ground that there the son knew his fiancee was not to drive the automobile, and *Volk* on the ground that there the most that could be said was that the father had agreed to let his son's friend drive, if his son was along.

## IV

As mentioned at the outset, here the jury found, both by general verdict and special findings, that Millicent Melanovich had impliedly permitted Craig Calabria to use her automobile. In deciding whether judgment n. o. v. should nevertheless be entered, we must examine the evidence in the light most favorable to appellees as the verdict winners. *Eldridge v. Melcher*, 226 Pa.Super. 381, 386, 313 A.2d 750, 753 (1973). So regarded, the evidence was plainly insufficient. There is nothing in the record that can support a finding of a connection between Miss Melanovich and Craig. Miss Melanovich said or did nothing to entitle Samuel Mela-

novich to believe that he could loan the automobile to Craig. It does not appear that Samuel had ever before loaned the automobile—to Craig or anyone else. Nothing appears to suggest that Miss Melanovich might have suspected that on the evening in question Samuel would for the first time loan her automobile to someone. Nothing appears to suggest that Miss Melanovich had ever spoken to Craig, or even knew him. It only appears that Miss Melanovich loaned her automobile to Samuel, with instructions that since he had only a junior license he must be sure to be home with it on time. Both on principle and under the decisions of our Supreme Court and this court, this was not enough to permit a finding of any permission by Miss Melanovich encompassing Craig's use of her automobile.

The order of the lower court is reversed and the record remanded with instructions to enter judgment in favor of appellant notwithstanding the verdict.