## Loftus v. Allstate Insurance Co.

*William J. Lottrell, III,* for plaintiff.
*John E. Salmon,* for defendant.

GUARINO, *J.*, January 17, 1986—Sean P. Loftus has brought this action for declaratory relief under the Declaratory Judgment Act, 42 Pa. C.S. §7531, seeking to have the court determine his status and rights under an automobile insurance policy issued to one Joseph Butch. Both Loftus and Butch are defendants in an action to recover for personal injuries filed by Samir Salah in Common Pleas Court in Philadelphia, August term, 1983, no. 364, arising out of an automobile accident which occurred on August 21, 1982. Allstate Insurance Company, defendant herein, has denied coverage and refused to represent plaintiff in that suit on the ground that at the time of the accident, he was not driving the insured vehicle with the permission of the owner and named insured, Joseph Butch.

An action for declaratory judgment lies for declaring the existing legal rights, status or other relation of the parties where the declaration will aid in the determination of a genuine justiciable controversy. 42 Pa. C.S. §7532; Fidelity Bank v. Penn. Turnpike Commission, 498 Pa. 80, 444 A.2d 1154 (1982); South Whitehall Twp. v. Commonwealth, Dept. of Transp., 82 Pa. Commw. 217, 475 A.2d 166 (1984); Mid-Centre County Authority v. Boggs Twp., 34 Pa. Commw. 494, 384 A.2d 1008 (1978). The action is particularly appropos in construing contracts of insurance in order to determine whether an insurer is obliged to defend and/or indemnify one claiming thereunder. Liberty Mut. Ins. Co. v. S.G.S. Co., 456 Pa. 94, 318 A.2d 906 (1974); Friestad v. Travelers Indem. Co., 452 Pa. 417, 306 A.2d 295 (1973); see generally, 42 Pa. C.S. §7533.

The omnibus clause of the instant insurance policy purports to extend coverage to:

". . . (a) you, (b) any resident relative, and (c) any

other person using it [the insured auto] with your permission."

As Loftus is not a resident relative of Butch, the named insured, to become a beneficiary under the policy, he must show that at the time of the accident he was using the insured vehicle with Butch's permission. Permission may be given either expressly or impliedly. Exner v. Safeco Ins. Co. of America, 402 Pa. 473, 167 A.2d 703 (1961); Crespy v. Bliesmer, 248 Pa.Super. 441, 375 A.2d 179 (1977).

Whether we take the testimony of plaintiff or the evidence of defendant insurer, we have little difficulty in finding that plaintiff was not given express permission to drive the insured's car on August 21, 1982. On this point, the evidence is that Loftus and Butch had spent that Saturday afternoon at the residence of plaintiff's brother, playing a drinking game called "quarters" with two of plaintiff's friends, Holzworth and Schmauler. The object of the game was to bounce quarters into a cup and the successful party would pick another player to drink an entire beer. It was a warm day and Butch was wearing gym shorts and a cut off T-shirt. As he had no pockets, he kept the keys to his car, which were on a key ring, on his finger. After two or three hours of playing quarters, Loftus became drunk and Butch, either through fatigue (he had worked late the night before) or drinking or a combination of the two, became sick. It was at this point that the alleged permission was given. According to Butch, he placed his keys on the table and said to plaintiff, "Watch my keys; I'm going upstairs to be sick." According to Loftus and his friend Holzworth, Butch said, "Here are my keys; I'm going upstairs to be sick". The automobile which Butch had parked in front of the house was not mentioned in the key transaction. Butch went upstairs, where he slept for several

hours. When he recovered, his car and Loftus were missing.

In the absence of an unequivocally expressed permission, in order to prevail plaintiff must show some relationship or course of conduct or other circumstance in which the parties have mutually acquiesced, which implies permission to use the vehicle, i.e., that the named insured did or said something in reference to the insured's car leaving the impression that the ensuing use was with permission, Brower v. Employers' Liability Assur. Co., 318 Pa. 440, 177 A. 826 (1935); Ins. Co. of No. America v. State Farm Mut. Ins. Co., 266 Pa.Super. 197, 403 A.2d 611 (1979); Belas v. Melanovich, 247 Pa.Super. 313, 372 A.2d 478 (1977). The determination is for the fact finder upon consideration of all the surrounding circumstances. Exner v. Safeco Ins. Co. of America, supra, 402 Pa. at 478; see generally, Ins. Co. of No. America v. State Farm Mut. Ins. Co., supra; Crespy v. Bliesmer, supra; Belas v. Melanovich, supra.

In this regard, especially as to mutuality of acquiescence, the evidence is in dispute. Both sides agree that prior to the August 21, 1982 accident, Loftus and Butch had been friends from their high school days and that the automobile accident broke their friendship. According to plaintiff, he and Butch were bosom buddies; he had often been a dinner guest at the Butch residence and Butch's mother even offered to launder his clothing. According to Butch, they were "less than good friends" (his best friend was one Jay Fredericks), the meals they ate at his house consisted of snacks of pizza and other takeout food, and his mother only offered but never actually laundered Loftus' clothing.

With regard to use of the insured's automobile, plaintiff admits that the 1976 Pontiac Firebird was

Butch's "pride and joy" and that he hardly ever entrusted it to anyone. Notwithstanding, Loftus says that prior to the August 21 incident, he had used the car three or four times. He corroborated its use on May 22, 1982 by presenting a ticket he had gotten for speeding, and he testified that on several occasions after a night on the town in Atlantic City, Butch asked him to drive the car on their return trip home. Butch admits that on one such trip he entrusted the operation of the car to Loftus because he himself was tired. He denies that he ever gave the car or permission to use it to Loftus at any other time, and showed genuine surprise to plaintiff's evidence of the speeding ticket. He remembered the incident of May 22, 1982; he and Loftus had been at a diner and he had met a girl, whom he walked to her car at the rear of the parking lot. He left the keys in the ignition of his car so that his erstwhile friend could listen to the radio, and when he returned 20 minutes later, the car was right where he had left it. He learned for the first time at trial that Loftus had used the car in his absence and had gotten a ticket.

This evidence is insufficient to establish a course of conduct acquiesced in by the parties which would indicate that plaintiff had permission to use the insured's car for his own pleasure on August 21, 1982. Indeed, the inferences are to the contrary. The vehicle was the insured's pride and joy and he had steadfastly refused to permit even his closest friends to use it. The one time he permitted Loftus to drive it, he was present and the operation was for their mutual purpose, not Loftus' individual pleasure. There is nothing in the prior relationship between the parties in reference to the use of the car that would have led plaintiff to believe that he had permission to use it the late night of August 21, 1982 for a drunken frolic of his own.

There is no evidence to support the allegation that defendant insurer threatened Butch that he would not be covered unless he agreed that plaintiff did not have permission. On the contrary, the evidence is clear and uncontradicted that from the beginning of this controversy, in his statement to the police and to his insurance agent immediately after the accident, and in his deposition several months later, Butch persisted in his assertion that he had not given plaintiff permission, and he has never said anything to the contrary.

Even if we accept the dubious proposition that the omnibus clause is a limitation on coverage, i.e., an unusual clause that might defeat the reasonable expectation of the insured, see McDonald v. Keystone Ins. Co., 313 Pa.Super. 404, 459 A.2d 1292 (1983), the argument that defendant insurer is estopped from raising the defense of non-permission because the insurer failed to warn him of the limitation makes no sense as applied to this case. The principle that an insurer has a duty to explain to an applicant any limitation of the policy which will defeat coverage and that a failure to do so will estop the insurer from asserting the limitation exclusion, is a salutory judicial doctrine to protect the unwary insured in what is considered an adhesion contract. See e.g., Collister v. Nationwide Life Ins. Co., 479 Pa. 579, 388 A.2d 1346 (1978); McDonald v. Keystone Ins. Co., supra; Kelmo Enterprises v. Commercial Union Ins. Co., 285 Pa.Super. 13, 426 A.2d 680 (1981). Conceivably and as a practical matter, it would appear that the claim of estoppel is available only to the named insured. An insurance carrier can hardly be expected to warn all those who might come within the purview of the omnibus clause of the policy.

Neither the doctrine nor the holdings in the authorities relied upon, Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 469 A.2d 563 (1983) and McDonald. v. Keystone Ins. Co., supra, are applicable. Standard Venetian Blind does not stand for the proposition cited; that case holds that where a limitation in an insurance policy which is relied upon by an insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of the limitation by having failed to read or understand it. McDonald stands for the general proposition that where an insurance policy contains unusual provisions that might defeat the reasonable expectations of the insured, the insurer has a duty to explain the insured's rights at the time of application and a failure to do so will estop the insurer from enforcing the provisions.

Nor is there merit to plaintiff's argument that since the omnibus clause makes permissive use of the insured vehicle a precondition for coverage, in defending the named insured in the accident case, defendant insurer is conceding that plaintiff had permission. The argument proceeds from a distorted interpretation of the omnibus clause: coverage is extended only to those who have the permission of the named insured. Defendant insurance company is defending Butch, its named insured, against the consequences resulting from plaintiff's non-permissive use of the insured vehicle, which the insurance contract promises. As Butch is an insured under the policy, when sued on a claim arising out of the use of the insured car, the insurer is obliged to defend him, whether or not the claim against him has merit. Plaintiff is not covered by the insurance policy and not entitled to its benefits.

The argument that the policy should be liberally construed in favor of coverage, see Harleysville Mut. Cas. Co. v. Blumling, 429 Pa. 389, 241 A.2d 112 (1968), Shamey v. State Farm Mut. Automobile Ins. Co., 229 Pa.Super. 215, 331 A.2d 498 (1974), is also not relevant. The language in the omnibus clause is clear and unambiguous. Similarly written omnibus clauses have been found to be unambiguous. See generally, Brower v. Employer's Liability Assur. Co., supra; Belas v. Melanovich, supra; Crespy v. Bliesmer, supra. The fact that insurance policies are to be read liberally in favor of the insured and strictly as to the insurer, does not mean that the court should disregard the plain meaning. The doctrine of liberal construction is applied when the language is ambiguous; it is then that doubts are resolved in favor of the insured. As plaintiff has not shown by clear and convincing evidence that he is an insured, it is doubtful whether he can invoke the doctrine of liberal construction.

Finding as we have that Loftus' use of the motor vehicle was without Butch's permission, it necessarily follows that in refusing to undertake Loftus' defense, the insurer was not acting in bad faith, as has been alleged. Therefore, we need not enter into a consideration of Loftus' entitlement to attorneys' fees and costs incurred in bringing the instant action for declaratory relief. See Kelmo Enterprises, Inc. v. Commercial Union Ins. Co., supra.

Accordingly, for the reasons stated hereinabove, we find in favor of defendant.