592 A.2d 712

STATE FARM MUTUAL INSURANCE COMPANY, Appellant,

v.

Barbara J. JUDGE, Administrator of the Estate of Lionel C. Judge, Terry E. Cook, Coleen L. Michael, Mitchell Dean Emery, Dennis Emery and Erie Insurance Company, Appellees.

Superior Court of Pennsylvania.

Argued March 19, 1991.

Filed June 10, 1991.

Leo M. Stepanian, Butler, for appellant.

Lee A. Montgomery, Butler, for appellees Michael, Emery and Erie Ins.

Before ROWLEY, President Judge, and WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

In this appeal from a declaratory judgment, we are presented with a complex issue of automobile insurance coverage.

On or about November 19, 1988, Mitchell Dean Emery was driving a 1985 Camaro, owned by Terry E. Cook, when it struck and killed a pedestrian. The 1985 Camaro was insured under a policy of automobile insurance which had been issued by State Farm Mutual Insurance Company (State Farm). Terry E. Cook was the former boyfriend of Mitchell Emery's mother, Coleen L. Michael. Cook and Michael had separated in August, 1988, when Cook moved to New York, where he accepted employment. Upon moving, Cook left his Camaro with Coleen Michael so that she could use it while her vehicle was being repaired. Eight days before the Camaro was involved in the fatal accident, however, Cook had revoked Coleen Michael's permission to use the Camaro and had instructed her to deliver the vehicle to his parents for storage. Coleen Michael's vehicle, which was being repaired, was insured pursuant to a separate policy which also had been issued by State Farm. Mitchell Dean Emery lived with his father and customarily drove a Volkswagen which was owned by his father and insured by Erie Insurance Company.

On the day of the fatal accident, Emery had obtained his mother's permission to drive the Camaro. It is clear, however, that he did not have permission from Cook, who owned the vehicle. Cook, in fact, had no knowledge that Emery was operating the Camaro. Indeed, there was evidence that Cook had specifically directed that Emery was not to operate the Camaro when the vehicle had been left with Coleen Michael.[1]

The trial court found that Emery had been driving the Camaro without the owner's permission or consent; and, therefore, State Farm was not responsible for providing coverage under the policy which had been issued on that vehicle. The court found, however, that the Camaro was a substitute vehicle for the car owned by Coleen Michael, which was being repaired. Therefore, the court concluded, State Farm owed a duty to defend Coleen Michael and

1. The trial court's findings do not accept or reject this testimony. With respect thereto, the court simply made no findings.

Mitchell Emery under and pursuant to the policy which had been issued on the Michael vehicle. The court thereafter made no determination regarding coverage provided by Erie under the policy written by Erie on the Volkswagen customarily driven by Emery. State Farm appealed.

Our standard of review was recited in *Federal Kemper Ins. Co. v. Neary,* 366 Pa.Super. 135, 530 A.2d 929 (1987), as follows:

> In reviewing a judgment entered in a declaratory judgment action, we are bound by the same narrow standard of review which exists in equity actions. *Shaffer v. Flick,* 360 Pa.Super. 192, 195–196, 520 A.2d 50, 51 (1987); *Supp v. Erie Insurance Exchange,* 330 Pa.Super. 542, 544, 479 A.2d 1037, 1038 (1984). A judgment of a trial court will not be reversed absent a clear abuse of discretion or error of law. *Lombardo v. DeMarco,* 350 Pa.Super. 490, 495, 504 A.2d 1256, 1258 (1985). The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. *Estate of Tippins,* 487 Pa. 107, 112 n. 2, 408 A.2d 1377, 1380 n. 2 (1979); *Lombardo v. DeMarco, supra,* 350 Pa.Super. at 495, 504 A.2d at 1258; *Hoffman v. Gekoski,* 250 Pa.Super. 49, 52, 378 A.2d 447, 448 (1977). Where the trial court's factual determinations are adequately supported by the evidence, we may not substitute our judgment for that of the trial court. *Frowen v. Blank,* 493 Pa. 137, 142, 425 A.2d 412, 415 (1981).

*Id.,* 366 Pa.Superior Ct. at 139, 530 A.2d at 930–931.

The interpretation of a policy of insurance is a question of law. In *Geisler v. Motorists Mutual Ins. Co.,* 382 Pa.Super. 622, 556 A.2d 391 (1989), the Court said:

> The interpretation of an insurance policy is a question of law that is properly reviewable by the court. *Winters v. Erie Ins. Group,* 367 Pa.Super. 253, 257, 532 A.2d 885, 887 (1987). *See also Utica Mut. Ins. Co. v. Contrisciane,* 504 Pa. 328, 334, 473 A.2d 1005, 1008 (1984); *Timbrook v. Foremost Ins. Co.,* 324 Pa.Super. 384, 388, 471 A.2d 891,

893 (1984). In construing the policy, we are mindful that "[p]olicy clauses providing coverage are interpreted in a manner which affords the greatest possible protection to the insured.... The insured's reasonable expectations are the focal point in reading the contract language." *Winters v. Erie Ins. Group, supra* 367 Pa.Super. at 257–58, 532 A.2d at 887 (citations omitted). Our object, as is true in interpreting any contract,

> is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument.... Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.... Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (citations omitted). *See also Votedian v. General Acc. Fire & Life Assur. Corp.,* 330 Pa.Super. 13, 16–17, 478 A.2d 1324, 1326 (1984).

*Id.,* 382 Pa.Superior Ct. at 626–627, 556 A.2d at 393.

The pertinent language of the State Farm policies is as follows:

**Who Is an Insured**

When we refer to your car, a newly acquired car or a temporary substitute car, insured means:

1. **you;**

2. **your spouse;**

3. the **relatives** of the first **person** named in the declarations;

4. any other **person** while using such a **car** if its use is within the scope of consent of **you** or **your spouse;** and

5. any other **person** or organization liable for the use of such a **car** by one of the above **insureds.**

Under the language of these policies, neither Mitchell Emery nor Coleen Michael could qualify as an insured unless one or the other had Cook's consent to operate the Camaro at the time of the accident. See: *Federal Kemper Ins. Co. v. Neary, supra* at 139, 530 A.2d at 931, citing *Brower v. Employers' Liability Assurance Co., Ltd.,* 318 Pa. 440, 444, 177 A. 826, 828 (1935); *Belas v. Melanovich,* 247 Pa.Super. 313, 372 A.2d 478 (1977). See also: Annot., Omnibus Clause as Extending Automobile Liability Coverage to Third Persons Using Car with Consent of Permittee of Named Insured, 21 A.L.R. 4th 1146 (1983).

■ First, it is clear and the trial court found as fact that Emery did not have the consent of Cook, the owner, to drive the Camaro. The evidence is unequivocal that express consent had not been given. It is also clear that consent cannot be inferred from the circumstances. "Implied permission may arise from the relationship of the parties or by virtue of a course of conduct in which the parties have mutually acquiesced." *Federal Kemper Ins. Co. v. Neary, supra* at 140, 530 A.2d at 931, citing *Brower v. Employers' Liability Assurance Co., Ltd., supra* at 444, 177 A. at 828; *Esmond v. Liscio,* 209 Pa.Super. 200, 206, 224 A.2d 793, 796 (1966).

> "However, 'permission' requires something more than mere sufferance or tolerance without taking steps to prevent the use of the automobile, and permission cannot be implied from possession and use of the automobile without the knowledge of the named insured." [Blashfield, Automobile Law and Practice] § 315.10, at 608. "[T]he critical question will always be whether the named insured said or did something that warranted the belief that the ensuing use was with his consent. There must be 'a connection made' with the named insured's own conduct; proof of 'acts, circumstances, and facts, such as the continued use of the car,' will be insufficient 'unless they attach themselves in some way to the acts' of the named insured." *Belas v. Melanovich, supra,* 247 Pa.Super. at 324, 372 A.2d at 484, quoting *Beatty v. Hoff,* 382

Pa. 173, 177, 114 A.2d 173, 174 (1955). See: *Crespy v. Bliesmer,* 248 Pa.Super. 441, 445, 375 A.2d 179, 181 (1977); *Helwig v. Esterly,* 205 Pa.Super. 185, 189, 208 A.2d 10, 12 (1965).

*Federal Kemper Ins. Co. v. Neary, supra* at 140, 530 A.2d at 931. The evidence here was that Cook had not engaged in conduct which implied consent to Emery's operation of the Camaro. Mitchell Emery had operated the Camaro on two prior occasions. The first occurred only in a parking lot while Cook was present in the car. On a second occasion, Emery reportedly had operated the car, but there was no evidence that Cook had consented to it or approved of it thereafter. On the other hand, Cook's testimony was unequivocal that he had forbidden Emery to operate the Camaro because he feared that it would cause his insurance policy to be cancelled. Because, as the trial court found, there was neither express nor implied consent for Emery to operate Cook's vehicle, the State Farm policy written to provide coverage for the Camaro did not cover operation of the vehicle on November 19, 1988, when Mitchell Emery was involved in the fatal accident.

■ The State Farm policy issued to Coleen Michael defines a "temporary substitute car" as follows:

Temporary Substitute Car—means a **car** not owned by **you** or **your spouse,** if it replaces your car for a short time. *Its use has to be with the consent of the owner.* **Your car** has to be out of use due to its breakdown, repair, servicing, damage or loss. A temporary substitute car is not considered a non-owned car.

(emphasis added). It is important to observe that to qualify as a substitute car, the vehicle must replace the insured's vehicle "for a short time" and be with the "consent of the owner."

Here, the trial court specifically found that "Mr. Cook [had] rescinded his consent on or about November 11, 1988 . . . ." This finding is fully supported by the evidence. The revocation of consent became effective immediately; it did not continue for a reasonable time thereafter. Without

continuing consent, however, the Camaro could not be deemed a "temporary substitute vehicle." After the owner's consent had been revoked, the vehicle was subject to use only in accordance with the owner's directions, i.e., to return it to his parents for storage. When the vehicle was subsequently used by Emery for travel to a shopping center, the vehicle was not covered as a "temporary substitute car" under the State Farm policy which covered Coleen Michael's automobile.

Appellees' reliance upon *Randig v. O'Hara,* 123 Pa.Super. 251, 187 A. 83 (1936), is misplaced. In that case, a son had been making regular use of his mother's car, and he retained in his possession the keys for the car. A jury found that the mother's permission to use the car had not been revoked under circumstances recited by the Superior Court as follows:

> She was evidently vexed at his late use of the car the night before, and on learning that he proposed to go to Butler that day, told him that he must not use the car [Mrs. O'Hara's version]; or 'not to take the car' [Eugene O'Hara's version]; or 'I don't want you to take the car' [Mrs. Anderson's version]. But she did not require or ask him to turn over the keys to her, or revoke his general authority to use the car, or do anything else by way of countermanding his right to operate the car. He, evidently, did not regard it as a command or anything more than an expression of her wishes, for he got up from the table, went out to the garage, took out the car and drove to Butler. She paid for the gasoline purchased by him that day.

*Id.* 123 Pa.Super. at 256, 187 A. 83. The Court held that these facts did not require the entry of judgment n.o.v. in favor of the garnishee-insurer, reasoning:

> In any event we do not think that the testimony requires a finding that the general authority of Eugene O'Hara to operate the car was abrogated or suspended by the fact that his mother may have told him that day not to take the car, so long as she permitted him to keep the keys,

which she had given him and which supplied the physical means of operation. He did not so regard it, but considered it as only an expression of her wishes rather than a revocation of authority. He had used the car in disregard of such expression before and did it again, because he felt he had the right to use it whenever he wanted to or felt like it; and she had never deprived him of the power to use it by taking away the keys which made it possible for him to use it.

The jury could very well find that notwithstanding the language used by Mrs. O'Hara that morning—whichever version be accepted—the general authority of Eugene to use the car had not been abrogated or suspended so as to take him out of the insurance coverage of the policy.

*Id.* 123 Pa.Super. at 256, 187 A. 83.

In the instant case, the evidence was unequivocal and the trial court found as fact that Cook's consent to Coleen Michael's use of the Camaro had been rescinded. In view of this rescission, Cook's consent to use the car did not continue for an undefined, additional period. The revocation of consent became effective immediately. Thereafter, the car could be driven only for the purpose of delivering it to Cook's parents for storage. Although Ms. Michael may have had a reasonable time within which to deliver the Camaro to Cook's parents, she did not have permission to use the car for any other purpose after permission to do so had been revoked. As such, the Camaro ceased to be a "temporary substitute car" as soon as Cook's permission to use the same had been rescinded. Coleen Michael's grant of permission to her son to use the Camaro on the date of the accident was ineffective to restore the vehicle to the status of a "temporary substitute car."

It follows that the declaratory judgment entered by the trial court must be reversed. The findings of fact made by the trial court which heard the evidence are that neither Coleen L. Michael nor her son, Mitchell Dean Emery, had permission from Terry E. Cook, the owner, to operate the Camaro on the date of the accident. It may be that cover-

age exists under the policy of insurance issued by Erie on the Volkswagen owned by Emery's father. This issue was not decided by the trial court, however, and with respect thereto we venture no opinion. Erie's coverage, if any, must await further determination.

Judgment reversed and now entered in favor of appellant.