NATIONWIDE MUTUAL INSURANCE
COMPANY, Appellee

v.

Joseph CUMMINGS, Appellant
(Two Cases).

Superior Court of Pennsylvania.

Argued Oct. 4, 1994.

Filed Dec. 30, 1994.

of sentence [4] of paragraph First (e) is that it applies only where the great-grandchild dies without issue. We deem this interpretation to flow from foregoing analysis, and to be consistent with the distributive scheme envisioned by the settlor/testator as expressed in both his Trust Agreement and Will.

Nicholas S. Mattise, Clarks Greene, for appellant.

Lucille Marsh, Scranton, for appellee.

Before ROWLEY, President Judge, and KELLY and CERCONE, JJ.

KELLY, Judge:

In this opinion, we are called upon to determine whether a "non-permissive use" exclusion in an automobile insurance policy contravenes the legislative intent of the Motor Vehicle Financial Responsibility Law, and is against public policy, where the injured party is an uninsured passenger who has no knowledge of the fact he is occupying a stolen vehicle. We hold that the exclusion is valid and in accordance with public policy, and affirm the judgment entered by the trial court.

The pertinent facts and procedural history of this case are as follows. On May 17, 1987, appellant, who was uninsured and did not own a car, accepted a ride offered by one Kevin Sheare, also uninsured. Sheare was driving a 1974 Buick Apollo, which he had previously stolen from its owner, Ms. Theresa Cook. At that time, Ms. Cook was the named insured under a policy issued to her by appellee, Nationwide Mutual Insurance Company. Sheare represented to appellant that the automobile was his (Sheare's) aunt's automobile. Because appellant needed transportation to a certain location, he accepted the ride, and promptly fell asleep. (Trial Court Finding of Fact No. 4, November 24, 1993, at 2).

The auto was subsequently involved in a one vehicle accident. As a result of the accident, appellant suffered numerous physical injuries. Appellant collected uninsured motorist benefits under a policy carried by his sister. (Trial Court Finding of Fact No. 8, November 24, 1993, at 3). The owner-insured, Ms. Cook, never granted Sheare permission to drive her vehicle, nor appellant permission to occupy it as a passenger. (Trial Court Finding of Fact No. 7, November 24, 1993, at 3).

Appellant subsequently submitted a claim to appellee for uninsured motorist benefits under the policy covering the 1974 Buick Apollo owned by the named insured, Theresa Cook. Appellant denied the claim on the basis that the policy excluded coverage for use of the vehicle without the owner's permission. (Trial Court Finding of Fact No. 9, November 24, 1993, at 3).

■ The underlying action was commenced by appellee's complaint in equity seeking a declaratory judgment concerning coverage under Ms. Cook's policy. Following discovery, the parties, by stipulation, submitted the action for decision. On November 24, 1993, the trial court found in favor of appellee, and entered a *decree nisi* in favor of appellee and as against appellant in accordance with its decision. On December 30, 1993, following the filing of exceptions by the parties, the court entered an order denying appellant's exceptions, and amended its November 24, 1993 decree to read "final de-

cree". On March 18, 1994, judgment was entered for appellee. This timely appeal followed.[1]

On appeal, appellant raises the following issues for our review:

1. WHETHER THE NON–PERMISSIVE USE EXCLUSION FOR UNINSURED MOTORIST BENEFITS IN A POLICY OF AUTOMOBILE INSURANCE IS INVALID AS CONTRARY TO LEGISLATIVE INTENT AND/OR PUBLIC POLICY.

2. WHETHER APPELLANT, AS A PASSENGER IN A STOLEN AUTOMOBILE INSURED BY APPELLEE, CAN PROPERLY BE CONSIDERED A NON–PERMISSIVE USER FOR PURPOSES OF THE POLICY EXCLUSION.

Appellant's Brief at 4.

██ Appellant claims the "non-permissive use" exclusion for uninsured motorists benefits in the policy in question is invalid as against the legislature's intent and public policy as expressed in the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.*[2] (hereinafter "MVFRL"). Specifically, appellant asserts that there is no provision in the MVFRL that expressly authorizes exclusion of this coverage on the basis of conversion, or lack of permissive use.

Appellant points out that § 1718(b)[3] (first party benefits) and § 1752(b)[4] (assigned claims plan) of the MVFRL expressly preclude "knowing converters" of motor vehicles from coverage and/or benefits. Appellant argues that because the legislature failed to include a limitation or exclusion in one provision, but expressly provided for it in another, the absence of a "non-permissive use" exclusion provision from the uninsured motorists section of the MVFRL signifies a different legislative intent, *i.e.*, that exclusions from coverage based on "knowing conversion" or "non-permissive use" of an auto do not apply to cases involving uninsured victims of motor vehicle accidents. Because he was an innocent and unknowing passenger in a stolen vehicle, appellant concludes that excluding coverage here would contravene the legislature's intent and public policy.

██ Appellee, on the other hand, asserts that the policy exclusion is clear and that none of the applicable provisions of the MVFRL prohibit an insurer from providing coverage only where the vehicle is used with the permission of the owner. Based upon the reasoning below, we agree.

██ Initially, we note our standard of review of a trial court's decision in a declaratory judgment[5] action is narrow. Because

---

1. Initially, we quash appellant's appeal docketed at No. 33 Philadelphia 1994 as interlocutory. The trial court entered a *decree nisi* in this matter on November 24, 1993. On December 3, 1993, appellant filed exceptions in the form of a post-trial motion to the trial court's decision and decree dated November 24, 1993, which were subsequently denied by the trial court on December 30, 1993. On December 23, 1993, appellant filed a notice of appeal to this Court from the November 24, 1993 *decree nisi*. However, the trial court did not amend the *decree nisi* to read "final decree" until its December 30, 1993 order. A *decree nisi* is not a final and appealable order until, following the denial of post-trial exceptions, it is entered as a final decree. Pa.R.Civ.P. 227.1 and 227.4; Pa.R.A.P. 301 (Note); *In re M.T.*, 414 Pa.Super. 372, 384, 607 A.2d 271, 277 (1992); *Den–Tal–Ez, Inc. v. Siemens Capital Corp.*, 389 Pa.Super. 219, 225 n. 1, 566 A.2d 1214, 1217 n. 1 (1989) (*en banc*). We also note that appellant has properly preserved his issues for appellate review by timely filing a notice of appeal on April 13, 1994 from the judgment entered on March 18, 1994.

2. Act of February 12, 1984, P.L. 26, No. 11, § 3, effective October 1, 1984.

3. 75 Pa.C.S.A. § 1718(b) provides that "[a] person who knowingly converts a motor vehicle is ineligible to receive first party benefits from any source other than a policy of insurance under which he is an insured for any injury arising out of the maintenance or use of the converted vehicle."

4. 75 Pa.C.S.A. § 1752(b) renders a person "ineligible to recover benefits from the Assigned Claims Plan if that person contributed to his own injury in any of the following ways:

   *    *    *    *    *    *

   (4) While knowingly converting a motor vehicle."

5. An action for declaratory judgment lies for declaring the existing legal rights, status, or other relation of the parties where the declaration will aid in the determination of a genuine, justifiable controversy. 42 Pa.C.S.A. § 7532; *Fidelity Bank v. Penn. Turnpike Commission*, 498 Pa. 80,

declaratory judgment actions arise in equity, we will set aside the judgment of the trial court only where it is not supported by adequate evidence. *St. Paul Mercury Ins. Co. v. Corbett*, 428 Pa.Super. 54, 630 A.2d 28 (1993) (*en banc*), *appeal discontinued*, 535 Pa. 658, 634 A.2d 221 (1993) (citing *Palladino v. Dunn*, 361 Pa.Super. 99, 103, 521 A.2d 946, 948 (1987)). The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. *See Federal Kemper Ins. Co. v. Neary*, 366 Pa.Super. 135, 139, 530 A.2d 929, 930–31 (1987).

The MVFRL repealed and replaced the No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 *et seq.* (hereinafter "No–Fault Act"), effective October 1, 1984.[6] The provisions for uninsured motorists are contained in Subchapter C, § 1731–1736. At the time of the accident, the MVFRL required all motor vehicle insurance policies to provide for uninsured motorist coverage.[7] However, uninsured motorist coverage remained limited to those persons who are *legally* entitled to recover damages:

> Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle *and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles.*

75 Pa.C.S.A. § 1731(b) (emphasis added).

Appellant maintains that because the legislature did not include a provision in Subchapter C of the MVFRL expressly providing for either "knowing converter" or "non-permissive user" exclusions, the legislature intended that such clauses should not apply to unin-

sured motorists like himself. Thus, appellant concludes that the "non-permissive use" exclusion in Ms. Cook's policy which operates to deny him coverage is invalid as against legislative intent and public policy. We disagree.

■ It is well-settled that the interpretation of an insurance policy is a question of law for the court. *Lambert v. McClure*, 407 Pa.Super. 257, 261, 595 A.2d 629, 631 (1991); *Geisler v. Motorists Mutual Ins. Co.*, 382 Pa.Super. 622, 626, 556 A.2d 391, 393 (1989). Further,

> where the language of an insurance contract is clear and unambiguous, a court is required to give effect to that language. *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). A court may not "rewrite" an insurance contract, or construe clear and unambiguous language to mean other than what it says. *Guardian Life Ins. Co. v. Zerance*, 505 Pa. 345, 353, 479 A.2d 949, 953 (1984); *Patterson v. Reliance Ins. Companies*, 332 Pa.Super. 592, 595, 481 A.2d 947, 949 (1984).... Such a provision will only be avoided if it violates public policy. *Tallman v. Aetna Casualty and Surety Co.*, 372 Pa.Super. 593, 595, 539 A.2d 1354, 1355 (1988).

*Jeffrey v. Erie Ins. Exchange*, 423 Pa.Super. 483, 489–90, 621 A.2d 635, 638 (1993) (*en banc*), *appeal denied*, 537 Pa. 651, 644 A.2d 736 (1994), *reconsideration denied*, (April 25, 1994) (emphasis provided).

Appellant does not allege that the language of the "non-permissive use" exclusion is unclear or ambiguous. Rather, appellant

---

444 A.2d 1154 (1982). This type of action is particularly appropriate in construing contracts of insurance in order to determine whether an insurer is obliged to defend and/or indemnify one claiming thereunder. *Liberty Mutual Ins. Co. v. S.G.S. Co.*, 456 Pa. 94, 318 A.2d 906 (1974); *see generally* 42 Pa.C.S.A. § 7533 (construction of documents).

6. The text of the MVFRL applicable to the instant case is referred to as the statute existed on the date the cause of action arose, May 17, 1987. The MVFRL was subsequently amended by the Act of February 7, 1990, P.L. 11, No. 6, effective July 1, 1990.

7. 75 Pa.C.S.A. § 1731 "(a): General rule.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage)."

charges that the exclusion itself is void as against the legislature's intent as manifested in the MVFRL, and therefore in contravention of public policy.[8] Appellant avers that the MVFRL, as a remedial statute, is to be liberally construed, so as to obtain the legislative intent to protect the public from loss caused by negligence. Thus, by construing the MVFRL liberally, appellant concludes that the "non-permissive use" exclusion, which denies him benefits under Ms. Cook's policy is invalid, thereby entitling him to uninsured motorist benefits. We disagree.

The public policy of the Commonwealth with regard to the recovery of damages by uninsured motorists when injured as a result of the use of an insured motor vehicle is expressed in the MVFRL. Two major considerations that prompted the repeal of the No–Fault Act and the enactment of the MVFRL were the escalating costs of purchasing motor vehicle insurance and the increasing numbers of uninsured motorists. *Jeffrey v. Erie Ins. Exchange, supra* at 502, 621 A.2d at 645 (citing *Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 63, 535 A.2d 1145, 1151 (1988) (*en banc*), *allocatur denied*, 520 Pa. 590, 551 A.2d 216 (1989); *Lambert v. McClure, supra*, 407 Pa.Super. at 262, 595 A.2d at 631 (same). In order to fulfill its purposes, the MVFRL established a recovery scheme that sets out minimum amounts of coverage that must be offered to the insured. *See Lambert v. McClure, supra* at 262, 595 A.2d at 631. However, the method by which an injured party obtains coverage is limited to the clear and unambiguous terms of the insurance policy. *See St. Paul*

*Mercury Ins. v. Corbett, supra*, 428 Pa.Super. at 59, 630 A.2d at 32 (citing *Johnson v. Pennsylvania National Insurance*, 527 Pa. 504, 594 A.2d 296 (1991).

The exclusion from coverage under this policy for persons using the auto without Ms. Cook's permission is not contrary to the intent of the MVFRL. Merely because the MVFRL does not contain a "knowing converter" or "non-permissive use" provision in the section providing for uninsured motorists benefits, does not compel the conclusion that the statute should be construed to render invalid a policy exclusion that limits coverage to permissive users. Mindful of the purposes of the MVFRL, we have recently upheld various limitations on uninsured motorist benefits. *See, e.g., St. Paul Mercury Ins. Co. v. Corbett, supra* (policy benefit limiting UM coverage to antique automobile activities held not contrary to MVFRL or public policy); *Marino v. General Accident Insurance*, 416 Pa.Super. 1, 610 A.2d 477 (1992) (a "use for hire" exclusion in an uninsured motorist endorsement held not violative of the MVFRL, especially in light of the fact that the statute does not contain an exclusive list of permissible coverage exclusions).

In *Marino v. General Accident Insurance, supra*, this Court noted that the MVFRL does not contain an exhaustive list of permissible coverage exclusions.[9] Although it is true that the MVFRL must be construed liberally to effect its objects and promote justice, *Lambert v. McClure, supra*, 407 Pa.Super. at 262, 595 A.2d at 631, this responsibility does not mean we should disregard the plain meaning of the exclusion in

---

**8.** We note that appellant fails to articulate how the exclusion provision in this case violates public policy. The phrase "public policy" has been used in a general sense to mean that in certain egregious circumstances a contract will be declared void if it is " 'so obviously for or against the public health, safety, morals or welfare that there is virtual unanimity in regard to it, that a court may constitute itself the voice of the community ...' " *Jeffrey v. Erie Insurance Exchange, supra* at 493, 621 A.2d at 640 (quoting *Mamlin v. Genoe*, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941)). We have also used the phrase "public policy" where we interpret statutes broadly to help manifest their legislative intent. *Id.* at 493–94, 621 A.2d at 640. Nonetheless, in operation, " 'public policy is determined with reference to the laws and legal precedents rather than from

general considerations of supposed public interest.' " *Id.* at 495, 621 A.2d at 641 (quoting *Daly–Sand v. West American Ins. Co.*, 387 Pa.Super. 630, 637, 564 A.2d 965 (1989)); *accord Guardian Life Insurance Co. v. Zernace*, 505 Pa. 345, 354, 479 A.2d 949, 954 (1984). Therefore, we will address appellant's public policy argument within the context of our discussion of his legislative intent claim.

**9.** Additionally, the regulations promulgated under the MVFRL include a sample policy which contains the following language: "Insured automobile— ... shall not include an automobile while being used without the permission of the owner." 31 Pa.Code. § 63.2.

question and declare it invalid. As we stated *supra,* one of the purposes of the MVFRL was to control the spiraling costs of auto insurance. *See St. Paul Mercury Ins. Co. v. Corbett, supra,* 428 Pa.Super. at 63, 630 A.2d at 33. We are, therefore, of the opinion that to invalidate the exclusion would frustrate this purpose.

Individuals who use motor vehicles for their own personal use should, and do, pay a premium based on the risk associated with that particular use, and not for the greater risk associated with the use of the vehicle when used without the owner's permission. The legislature intended to control motor vehicle insurance costs by enacting the MVFRL. To invalidate the exclusion in this case would work the opposite effect by forcing insurers to require higher premiums from purchasers based on the greater risk the insurers would assume. *See e.g. Marino v. General Accident Ins. Co.,* 416 Pa.Super. 1, 6–7, 610 A.2d 477, 479 (1992). Thus, because we conclude that the MVFRL does not prohibit the "non-permissive use" exclusion in the instant policy, we hold that such an exclusion does not undermine the MVFRL.

Appellant further maintains that as an uninsured innocent victim injured while a passenger in a stolen vehicle, he is entitled to uninsured motorist benefits under the reasoning provided by this Court in *Ector v. Motorists Ins. Companies,* 391 Pa.Super. 458, 571 A.2d 457 (1990), *allocatur denied,* 525 Pa. 646, 581 A.2d 572 (1990). In *Ector v. Motorists Ins. Companies, supra,* an uninsured pedestrian was injured when he was struck by an insured vehicle which had been stolen by an uninsured driver. The insurer denied the pedestrian's claim for uninsured motorist benefits. On appeal, the pedestrian argued that this Court was bound by *Tubner*

*v. State Farm Mut. Auto Ins. Co.,* 496 Pa. 215, 436 A.2d 621 (1981) and *Prudential Property and Cas. Ins. Co. v. Falligan,* 335 Pa.Super. 195, 484 A.2d 88 (1984). Both cases arose under the now defunct No–Fault Act. In each case, the court relied on the No–Fault Act's articulated purpose of providing "maximum feasible restoration" [10] to require the insurers to provide uninsured motorists benefits to the uninsured injured persons.[11]

After analyzing the parties' positions in light of the applicable statutes, a three-judge panel of this Court noted that the MVFRL does not contain any policy language analogous to the "maximum feasible restoration" language contained in the No–Fault Act. Nonetheless, this Court concluded that because a financial responsibility act is remedial in nature, and therefore, must be liberally construed, the MVFRL is "sufficiently analogous to require this Court to follow our decision in *Falligan.*" *Ector v. Motorists Ins. Companies, supra,* 391 Pa.Super. at 466, 571 A.2d at 461. Appellant thus posits that these prior decisions control the instant case. We disagree.

Recently, an *en banc* panel of this Court addressed an argument that the MVFRL should be liberally construed to mandate invalidating a policy limitation on uninsured motorists benefits, on the grounds that the principle of "maximum feasible restoration" was carried over into the MVFRL by virtue of this Court's application of that principle in *Ector v. Motorists Ins. Companies, supra.* Cognizant that remedial legislation of this nature should be liberally construed, this Court concluded that the principle of "maximum feasible restoration" no longer exists in Pennsylvania law because the No–Fault Act

---

**10.** The former 40 P.S. § 1009.102(a) stated in pertinent part:

(a) Findings.—The General Assembly hereby finds and declares that:

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;

(3) the maximum feasible restoration of all individuals injured and compensation of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways ... is essential to the humane and purposeful functioning of commerce; ...

**11.** In *Tubner v. State Farm Mut. Auto Ins. Co., supra,* the uninsured passenger died of injuries received while he was a passenger in an uninsured motor vehicle. In *Prudential Property and Cas. Ins. Co. v. Falligan, supra,* the uninsured pedestrian was injured by an insured automobile while it was operated by the owner's son without the owner's permission. The case was consolidated with *Donovan v. Keystone Ins. Co.,* which involved an uninsured pedestrian who was struck by an insured automobile operated by a person who had stolen the vehicle.

was repealed by the MVFRL, which contains no such legislative findings section. *See Jeffrey v. Erie Ins. Exchange, supra,* 423 Pa.Super. at 495, 621 A.2d at 641. In doing so, this Court rejected the implication that our responsibility to liberally construe the MVFRL is as broad a judicial mandate to effectuate coverage as was the "maximum feasible restoration" principal in the now-defunct No–Fault Act. *Id.* at 495 n. 5, 621 A.2d at 641 n. 5. Therefore, appellant's reliance on *Ector v. Motorists Ins. Co., supra* is misplaced, as our decision in that case has been limited by a subsequent decision of an *en banc* panel of this Court, and is therefore not dispositive of the instant appeal.

■ We now turn to appellant's second claim raised on appeal. Appellant contends that because the statutory framework of the MVFRL expressly authorized exclusions of coverage based on "knowing conversion" of an auto, any exclusion that would apply to uninsured motorists coverage could only logically extend to those who knowingly convert an auto. Appellant notes that it is undisputed that he did not have any knowledge that the auto was stolen. Based on these facts, appellant concludes that as he was not a "knowing converter", he would not come within the ambit of a valid exclusion, and therefore is entitled to uninsured motorist benefits under Ms. Cook's policy. Because we have already determined that the "non-permissive use" exclusion in the instant policy is valid under the MVFRL, we conclude that appellant's argument that a "knowing converter" standard should apply to displace the valid language of the "non-permissive use" exclusion is without merit.

Therefore, we need only determine whether, under these circumstances, appellant comes within that class of claimants who are precluded from uninsured motorists coverage based on non-permissive use. The pertinent language of the coverage exclusion for uninsured motorists reads as follows:

This uninsured/underinsured motorists insurance does not apply as follows:

\* \* \* \* \* \*

2. It does not apply to use of any vehicle by **an insured** without permission of the owner.

(Exhibit A at 12).

Under this language, neither Sheare nor appellant would qualify as an insured unless one or the other had Ms. Cook's permission to use the auto at the time of the accident. (*See* Exhibit A at 5, "Auto Liability Coverage"); *see also St. Farm Mut. Ins. Co. v. Judge,* 405 Pa.Super. 376, 381, 592 A.2d 712, 714 (1991); *Federal Kemper Ins. Co. v. Neary,* 366 Pa.Super. 135, 139, 530 A.2d 929, 931 (1987) (citing *Brower v. Employers' Liability Assurance Co. Ltd.,* 318 Pa. 440, 444, 177 A. 826, 828 (1935); *Esmond v. Liscio,* 209 Pa.Super. 200, 206, 224 A.2d 793, 796 (1966)).

■ Whether a user of an automobile has the permission necessary to elevate that user to the status of an additional insured depends upon the facts and circumstances of each case in light of the underlying policy language. *See e.g. Federal Kemper Ins. Co. v. Neary, supra* 366 Pa.Super. at 139, 530 A.2d at 931. The owner's permission to use an automobile may either be expressed or implied. *Id.* "Implied permission may arise from the relationship of the parties or by virtue of a course of conduct in which the parties have mutually acquiesced." *Id.* at 140–41, 530 A.2d at 931 (citing *Brower v. Employers' Liability Assurance Co. Ltd., supra,* 318 Pa. at 444, 177 A. at 828; *Esmond v. Liscio, supra,* 209 Pa.Super. at 206, 224 A.2d at 796). "However, 'permission' requires something more than mere sufferance or tolerance without taking steps to prevent the use of the automobile, *and permission cannot be implied from possession and use of the automobile without the knowledge of the named insured.*" *St. Farm Mut. Ins. Co. v. Judge, supra,* 405 Pa.Super. at 381, 592 A.2d at 714; *Federal Kemper Ins. Co. v. Neary, supra,* 366 Pa.Super. at 140, 530 A.2d at 931 (quoting Blashfield, *Automobile Law and Practice,* § 315.10 at 608) (emphasis added).

Our focus, then, is not directed to the actions of the ultimate user of the auto, but rather, "whether the *named insured* said or did something that warranted the belief that the ensuing use was with his consent. There

must be 'a connection made' with the named insured's own conduct; [mere] proof of 'acts, circumstances, and facts, such as continued use of the car,' will be insufficient 'unless they attach themselves in some way to the acts' of the named insured." *Id.; Belas v. Melanovich,* 247 Pa.Super. 313, 324, 372 A.2d 478, 484 (1977) (quoting *Beatty v. Hoff,* 382 Pa. 173, 177, 114 A.2d 173, 174 (1955)) (emphasis added).

 Instantly, the trial court found as a fact that Ms. Cook, the owner/named insured, never granted Sheare permission to drive her vehicle nor appellant permission to occupy it as a passenger. (Trial Court Finding of Fact No. 7, November 24, 1993, at 3). Appellant asserts, however, that "non-permissive use" of a motor vehicle should be interpreted as equivalent to the criminal definition of "unauthorized use" of a motor vehicle,[12] which requires actual operation of the motor vehicle without authorization, and not mere occupancy. We disagree.

The MVFRL provides for uninsured motorist coverage (and valid exclusions) for injuries "arising out of the maintenance *or use* of a motor vehicle ..." 75 Pa.C.S.A. § 1731(b) (emphasis added). The language of the uninsured motorist coverage exclusion also refers to "use" and not "operation". Appellant urges this Court to interpret the term "use" as provided in both the policy and the MVFRL to be limited to "operation", an interpretation we decline to undertake. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). Further, where the policy language is clear and unambiguous, it must be construed only as written, and a court cannot adopt a construction which conflicts with the clear meaning of the language. *Guardian Life Ins. Co. v. Zerance,* 505 Pa. 345, 353, 479 A.2d 949, 953 (1984). Therefore, we conclude that the term *"use"* in the "non-permissive use" exclusion incorporates the terms "occupant" and "passenger". Accordingly, we reject appellant's interpretation of the MVFRL and the policy coverage exclusion.

12. 18 Pa.C.S.A. § 3928.

The policy language in the instant case clearly and unequivocally limited uninsured motorist benefits to only those persons injured as a result of the use of Ms. Cook's auto where the auto was used with her permission. The policy exclusion itself comports with the purposes of the MVFRL by tying the risk assumed by the insurer to the scope of permission granted by the insured, a step we believe is necessary to control the spiraling costs of auto insurance. Therefore, because we hold that the "non-permissive use" exclusion is not invalid as against legislative intent and public policy, we affirm the judgment of the trial court.

Judgment affirmed.