Chief Justice CASTILLE and Justice BAER join the opinion.

Justice SAYLOR and Justice TODD concur in the result.

ERIE INSURANCE EXCHANGE, Appellee

v.

**E.L., a minor, by and through her Parents and Natural Guardians, David LOWRY and Tina Yoder, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 3, 2007.

Filed Jan. 3, 2008.

Reargument Denied March 11, 2008.

---

**13.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).

Michael J. Parrish, Jr., Johnstown, for appellant.

Phillip R. Earnest, Pittsburgh, for appellee.

BEFORE: TODD, BOWES and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 Appellant appeals from an order which granted the motion of Appellee Erie Insurance Exchange ("Erie") for judgment on the pleadings and denied Appellant's motion for summary judgment. We reverse and remand.

* Retired Senior Judge assigned to the Superior

¶ 2 The trial court summarized the background underlying this matter in the following manner:

This case arises from a motor vehicle accident that occurred on July 27, 2004. [Appellant] was a passenger in the backseat of a 1994 Chevrolet Cavalier driven by her brother, Drew Lowry. The car belonged to their mother, Tina Yoder, and was insured by a company other than [Erie]. Drew Lowry lost control of the automobile and collided with a guardrail on Route 219 in Somerset County. At the time of the accident[, Appellant] was eleven years old. As a result of the accident, [Appellant] suffered extensive injuries and used the entire amount of coverage available from her mother's auto insurance policy. [Appellant's] father, David Lowry, had auto coverage through [Erie] and had $100,000 in uninsured/underinsured motorist protection ... stacked on five vehicles, or $500,000 in total coverage. [Appellant] filed a claim for this amount and was denied based on the policy's "regularly used non-owned vehicle exclusion." [Erie] filed an Action for Declaratory Judgment asking [the trial court] to establish that they owed no duty to provide the benefits of David Lowry's policy to [Appellant]. [Erie] then filed for a Motion for Judgment on the Pleadings, which was followed by [Appellant's] Motion for Summary Judgment. Both parties ... agreed that the pertinent facts of the case are undisputed and ... only argu[ed] over the applicability of the exclusion to [Appellant].…

Trial Court Memorandum, 2/28/07, at 1–2.

¶ 3 The trial court granted Erie's motion for judgment on the pleadings and denied Appellant's motion for summary judgment. Appellant timely filed a notice of appeal.

Court.

The trial court directed Appellant to comply with Pa.R.A.P. 1925(b), which she did.

¶ 4 In her brief to this Court, Appellant asks that we consider the following question:

> Whether [Appellant's] underinsured motorist claim may be properly banned by the "regularly used, non-owned vehicle exclusion" contained within the Erie policy?

Appellant's Brief at 4.

¶ 5 Appellant appeals from an order granting a motion for judgment on the pleadings.

> In reviewing an order granting a motion for judgment on the pleadings, we apply the following principles:
>
> > Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034 which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered where there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

*Vetter et al. v. Fun Footwear Company et al.*, 447 Pa.Super. 84, 668 A.2d 529, 530–31 (1995) (quoting *Kosor v. Harleysville Mutual Insurance Company*, 407 Pa.Super. 68, 595 A.2d 128, 129–30 (1991).)

¶ 6 The underinsured motorist ("UIM") policy provision at issue in this case states as follows:

> This insurance policy does not apply to ... bodily injury to **you** or a **resident** using a non-owned **motor vehicle** or a non-owned **miscellaneous vehicle** which is regularly used by you or a **resident,** but not insured for uninsured or underinsured motorist's coverage under this policy.

Erie's Action for Declaratory Judgment, 5/18/06, Exhibit C, at 3 (boldface type in original).[1] The policy does not define the word "using," but it does provide a definition for the term "occupying."[2] In the trial court, Appellant argued that she was not "using" a motor vehicle when she sustained bodily injury.

¶ 7 In response to Appellant's argument, the trial court determined that, in *Burstein v. Prudential Property and Casualty Insurance Company*, 570 Pa. 177, 809 A.2d 204 (2002), our Supreme Court established "a fact-based precedent" which precludes UIM benefits in this case due to the regularly used, non-owned vehicle exclusion contained in Mr. Lowry's policy. Trial Court Memorandum, 2/28/07, at 5. The trial court then stated as follows:

> ... [T]he only remaining issue is whether "occupying" the vehicle should be applied interchangeably with "using" the vehicle. We believe it should. [Appellant] is insured under her father's policy for any injury she should suffer while riding in one of his vehicles or while riding in someone else's car on a rare occasion, regardless of the fact that she could never legally operate any of those

---

1. The words and phrases in boldface type are words and phrases which the policy specifically defines.

2. According to the policy, "occupying" means "in or upon, getting into or getting out of[.]" Erie's Action for Declaratory Judgment, 5/18/06, Exhibit A, at 4.

vehicles. It follows that, if using and occupying are synonymous in that sense, they should be in the instant situation as well. UIM benefits would not be available to [Appellant's] brother, as the driver of the car, and should not be available for [Appellant] either. By frequently riding in the backseat of her mother's car[, Appellant] established herself as a regular user of that vehicle and is not entitled to receive coverage under her father's [UIM] provision.

Trial Court Memorandum, 2/28/07, at 5–6.

¶ 8 In her brief to this Court, Appellant contends, in pertinent part, that the trial court misinterpreted the exclusion at issue in this case. More specifically, Appellant insists that the terms "using" and "occupying" are not interchangeable and that Appellant was not using a motor vehicle when she sustained bodily injury. Appellant takes the position that the trial court should have dismissed Erie's motion for judgment on the pleadings and should have awarded her UIM benefits pursuant to her father's policy with Erie. Erie, on the other hand, maintains that the trial court properly interpreted the relevant exclusion and that the court, therefore, committed no error.

¶ 9 The resolution of the issue raised in this appeal turns on the proper interpretation of an insurance contract.

As the interpretation of an insurance contract is a question of law, our standard of review is de novo; thus, we need not defer to the findings of the lower tribunals. Our scope of review, to the extent necessary to resolve the legal question before us, is plenary.

*401 Fourth St., Inc. v. Investors Insurance Group*, 583 Pa. 445, 879 A.2d 166, 170 (2005). As to the manner in which we are to interpret an insurance contract, our Supreme Court has stated:

The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, a court is required to give effect to that language. When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. Finally, [i]n determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract, do not assume that its language was chosen carelessly. Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

*Id.* at 171 (citations and quotation marks omitted).

¶ 10 We begin our analysis by agreeing with Appellant that, for purposes of the policy exclusion at issue, the words "using" and "occupying" are not interchangeable. The policy specifically defines "occupying," and that definition does not state that "occupying" means "using." If Erie intended the relevant exclusion to be triggered if an individual otherwise covered by the policy sustained bodily injury while "occupying" a regularly used, non-owned motor vehicle, then Erie should have utilized the word "occupying" rather than "using" in the exclusion or should have explicitly defined "occupying" as being interchangeable with "using." In fact, in other policy exclusions, Erie excludes

UIM coverage when persons protected by the policy are "occupying" certain classifications of motor vehicles. *See, e.g.,* Erie's Action for Declaratory Judgment, 5/18/06, Exhibit C, at 2 ("This insurance policy does not apply to … damages sustained by **anyone we protect** while **occupying** or being struck by a **motor vehicle** owned or leased by **you** or a **relative,** but not insured for Uninsured or Underinsured Motorists Coverage under the policy.").

¶ 11 Next, we reject the trial court's and Erie's conclusion that *Burstein* precludes coverage in this case. Mr. and Mrs. Burstein were struck by a motorcycle while driving a vehicle provided to Mrs. Burstein as a benefit of her employment. The motorcyclist's insurance did not cover the entirety of the damages suffered by the Bursteins, and her employer did not maintain UIM coverage for the company vehicle. The Bursteins, therefore, sought UIM coverage through the insurer of their privately owned vehicles, *i.e.,* Prudential. Prudential denied coverage pursuant to the policy's regularly used, non-owned vehicle exclusion.

■ ¶ 12 By the time this matter reached the Supreme Court, the only issue was whether the exclusion violated public policy. *Burstein,* 809 A.2d at 209 ("[T]he only issue in this appeal is whether the regularly used, non-owned car exclusion and its contractual restraint on UIM portability violate a clearly expressed public policy."). The *Burstein* court was not faced with the challenge currently presented by Appellant, *i.e.,* whether the regularly used, non-owned vehicle exclusion is applicable pursuant to the language utilized in

the exclusion. In fact, in *Burstein,* the parties agreed that, if the exclusion did not violate public policy, then it precluded coverage in this case. *Id.* at 207 ("Indeed, the parties agree that the exclusion, if applied, severs the portability of Appellees' UIM coverage to any regularly used, nonowned cars.").[3] Here, no such agreement exists. We, therefore, must determine what "using" means within the context of the exclusion at issue.

■ ¶ 13 As noted above, the policy does not define "use" or "using." These words, however, are of common usage; thus, we may inform our understanding of them by considering their dictionary definitions. *Madison Construction Company v. Harleysville Mutual Insurance Company,* 557 Pa. 595, 735 A.2d 100, 108 (1999). The difficulty in turning to the dictionary in order to define "use" or "using" is that the dictionary provides multiple definitions of these words. Recognizing this problem, our Supreme Court has provided the courts of this Commonwealth with the following guidance:

> Of course if the term "use" is construed to embrace all of its possible meanings and ramifications, practically every activity of mankind would amount to a "use" of something. However the term must be considered with regard to the setting in which it is employed.

*Erie Insurance Exchange v. Transamerica Insurance Company,* 516 Pa. 574, 533 A.2d 1363, 1367 (1987) (citations omitted).

¶ 14 In putting forward its interpretation of "using," Appellant directs this

---

**3.** Immediately prior to this quote and in reference to the regularly used non-owned vehicle exclusion at issue in that case, our Supreme Court stated, "The plain language of this provision clearly and unambiguously delineates an exclusion for regularly used, non-owned vehicles." *Burstein,* 809 A.2d at 207. Given

the limited nature of the issue under review in *Burstein* and the fact that the parties agreed that the exclusion in that case precluded coverage so long as it did not violate public policy, the court's conclusion regarding the policy's language clearly constituted *obiter dictum.*

Court to *Erie Insurance Exchange* and *Belser v. Rockwood Casualty Insurance Company*, 791 A.2d 1216 (Pa.Super.2002). In *Erie*, a three-and-a-half year old child gained access to a vehicle and somehow set the vehicle into motion, which caused injury to one child and killed another child. The primary issue in *Erie Insurance Exchange* was the interpretation of the word "use" as that word was utilized in competing insurance policies. Neither of the competing policies defined "use."

¶ 15 In rendering its interpretation of "use," the Supreme Court made the following observations:

> Considering the setting, a 3 1/2 year old child (Erin Gilbert in this case) is not capable of "using" an automobile in a rational, purposeful sense within the meaning of the relevant policy provisions. The unwitting actions of a 3 1/2 year old child in putting an automobile in motion is not "use" of an automobile and, is not one of the risks contemplated by the Erie policy or excluded by the Transamerica policy. For one to "use" an automobile in the sense contemplated by the pertinent provisions of the insurance policies in question, the alleged "user" should at least know and understand the uses to which an automobile, as an automobile, may be put. A 3 1/2 year old child, such as Erin Gilbert in this case, does not know how to "use" an automobile.
>
> We hold that the actions of 3 1/2 year old Erin Gilbert in gaining access to the unoccupied Robinson automobile and setting it in motion does not constitute "use" of that automobile within the contemplation of the relevant provisions of the policies in question....

*Erie Insurance Exchange*, 533 A.2d at 1367–68 (footnotes omitted).

¶ 16 In *Belser*, Belser–Hale Excavating hired Mark Hervatin, a dump truck operator, to haul dirt away from a construction site. In performing this duty, Hervatin's dump truck struck power lines, which caused Hervatin's death. Hervatin's estate brought a suit against the appellants, claiming that an employee of the appellants negligently gave directions to Hervatin, which caused him to strike the power lines that killed him. The appellant Bituminous Casualty Corporation ("Bituminous") insured appellants Karl Belser, Mike Hale, and Belser Hale Excavating (collectively, "Belser–Hale"), under an automobile and commercial general liability policy, while Rockwood Casualty Insurance Company ("Rockwood") insured Hervatin under a commercial automobile policy.

¶ 17 The Rockwood policy read, in relevant part, as follows:

> [Rockwood] will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto".

*Belser*, 791 A.2d at 1218. The policy did not define "use."

¶ 18 This Court framed the issue and the arguments in *Belser* in this manner:

> The primary issue in this case is whether Belser–Hale was an insured of Rockwood because the Belser–Hale employee directed Rockwood's insured, Hervatin, as Hervatin was operating the dump truck that came in contact with the power lines. [The a]ppellants contend that by directing Hervatin's actions, Belser–Hale was "using" the dump truck. In contrast, Rockwood argues that the Belser–Hale employee's connection to the truck was too attenuated to constitute a "use."

*Id.* at 1220. In resolving the issue before the Court, we stated, inter alia:

[O]ur Supreme Court has cautioned that the word "use" does not have unlimited meanings, and must be considered within the setting in which it is employed. *[Erie Insurance Exchange, supra].* In the instant case, the relevant context is that of a motor vehicle being driven by a competent adult from one place to another. In this context, "use" is defined as "a method or manner of employing or applying something." *Webster's Ninth New Collegiate Dictionary* (1983) at 1299. The method or manner of employing a vehicle is to physically operate it. When one merely guides or directs the movement of a vehicle, the person physically operating the vehicle is still generally considered the "user."

*Belser,* 791 A.2d at 1222 (footnote omitted). In the end, this Court determined that Belser–Hale's employee was not a "user" of Hervatin's truck.

¶ 19 Based upon *Erie Insurance Exchange* and *Belser,* Appellant asserts that "it is illogical to conclude that [Appellant as] a right rear, restrained, eleven (11) year old passenger who did not, and could not maintain a valid Pennsylvania driver's license or lawfully operate a motor vehicle was 'using' the motor vehicle at the time of the accident." Appellant's Brief at 13.

¶ 20 In support of its interpretation of "using," Erie relies on this Court's decision in *Nationwide Mutual Insurance Company v. Cummings,* 438 Pa.Super. 586, 652 A.2d 1338 (1994). This Court summarized the history underlying *Cummings* in the following manner:

On May 17, 1987, appellant, who was uninsured and did not own a car, accepted a ride offered by one Kevin Sheare, also uninsured. Sheare was driving a 1974 Buick Apollo, which he had previously stolen from its owner, Ms. Theresa Cook. At that time, Ms. Cook was the named insured under a policy issued to her by appellee, Nationwide Mutual Insurance Company. Sheare represented to appellant that the automobile was his (Sheare's) aunt's automobile. Because appellant needed transportation to a certain location, he accepted the ride, and promptly fell asleep.

The auto was subsequently involved in a one vehicle accident. As a result of the accident, appellant suffered numerous physical injuries. [The a]ppellant collected uninsured motorist benefits under a policy carried by his sister. The owner-insured, Ms. Cook, never granted Sheare permission to drive her vehicle, nor appellant permission to occupy it as a passenger.

[The a]ppellant subsequently submitted a claim to appellee for uninsured motorist benefits under the policy covering the 1974 Buick Apollo owned by the named insured, Theresa Cook. [The a]ppellant denied the claim on the basis that the policy excluded coverage for use of the vehicle without the owner's permission. The underlying action was commenced by appellee's complaint in equity seeking a declaratory judgment concerning coverage under Ms. Cook's policy. Following discovery, the parties, by stipulation, submitted the action for decision. On November 24, 1993, the trial court found in favor of appellee, and entered a *decree nisi* in favor of appellee and as against appellant in accordance with its decision. On December 30, 1993, following the filing of exceptions by the parties, the court entered an order denying appellant's exceptions, and amended its November 24, 1993 decree to read "final decree". On March 18, 1994, judgment was entered for appellee. This timely appeal followed.

*Id.* at 1339–40 (citations and footnote omitted).

¶ 21 The policy provision at issue in *Cummings* stated, "This uninsured/under-

insured motorists insurance does not apply ... to use of any vehicle by **an insured** without permission of the owner." *Id.* at 1344 (emphasis in original). The policy did not define "use," and the appellant urged this Court "to interpret the term 'use' ... to be limited to 'operation[.]' " *Id.* at 1345. We declined to adopt this interpretation and instead concluded "that the term *'use'* in the 'non-permissive use' exclusion incorporates the terms 'occupant' and 'passenger' ". *Id.* (emphasis in the original).

¶ 22 Erie contends that, here, we should interpret "use," as we did in *Cummings,* to incorporate the terms "occupant" and "passenger." Because Appellant occupied Ms. Yoder's company vehicle at the time of the accident and because Appellant was a passenger in the vehicle, Erie insists that the trial court committed no error by granting its motion for judgment on the pleadings on the basis of the valid regularly used, non-owned vehicle exclusion.

¶ 23 We conclude that both parties present compelling and reasonable constructions of the term "use." In such circumstances, we must conclude that contractual language is ambiguous, and therefore, we must construe the policy in favor of Appellant, as the insured. *401 Fourth St., Inc.,* 879 A.2d at 171. In drafting the regularly used, non-owned vehicle exclusion in Mr. Lowry's policy, Erie could have utilized more precise language, such as "occupied", if it intended to preclude coverage under the facts of this case. *County of Delaware v. J.P. Mascaro & Sons, Inc.* 830 A.2d 587, 591 (Pa.Super.2003) (In determining whether an ambiguity exists, the court may consider "whether alternative or more precise language, if used, would have put the matter beyond reasonable question."). Instead, Erie employed the ambiguous term "using" and chose not to define that term.

¶ 24 We further note that this construction of the exclusion does not conflict with the insuring provision of the policy. In relating when UIM coverage is triggered, the policy states:

> If [UIM c]overage is indicated on the **Declarations, we** will pay damages for bodily injury that **you** or **your** legal representative are legally entitled to recover from the owner or operator of an **underinsured motor vehicle.**
>
> *Damages must result from a motor vehicle accident arising out of the ownership or use of the ... **underinsured motor vehicle** as a motor vehicle* and involve bodily injury to **you** or others **we** protect. . . .

Erie's Action for Declaratory Judgment, 5/18/06, Exhibit C, at 1 (boldface type in original and emphasis added). Under either party's construction of the word "use", the underinsured vehicle, *i.e.,* Ms. Yoder's company car, was being "used" as a motor vehicle by Drew Lowry. As such, the damages being sought in this case arose out of the use of the underinsured motor vehicle. Accordingly, UIM coverage was triggered by the accident involving Ms. Yoder's company car.

¶ 25 For these reasons, we conclude that the trial court committed a clear error of law in granting Erie's motion for judgment on the pleadings. Moreover, because there is no genuine issue of material fact to be resolved and because Appellant is entitled to judgment as a matter of law, we further hold that the trial court erred by denying Appellant's motion for summary judgment.[4] Accordingly, we reverse the order of trial court, remand the case to the trial court, and direct that court to enter summary judgment in favor of Appellant.

---

4. Because the disposition of Appellant's first issue results in a judgment in her favor, we

need not address Appellant's public policy arguments.

¶ 26 Order reversed. Case remanded with instructions. Jurisdiction relinquished.

¶ 27 Judge BOWES files a dissenting opinion.

DISSENTING OPINION BY BOWES, J.:

¶ 1 I respectfully dissent from the majority's conclusion that Appellant was not using her mother's car. Appellant was a passenger in a vehicle being driven by a properly-licensed individual who was legally operating it. In *Nationwide Mutual Insurance Co. v. Cummings*, 438 Pa.Super. 586, 652 A.2d 1338 (1994), the policy, as in the case at bar, did not define the term "use," and we specifically held that a passenger who was occupying a car was using it. This decision has irrefutable logic since people who are occupying a vehicle that is purposefully being driven from one point to another, are "using" it, as that term connotes the act or practice of employing something. *Belser v. Rockwood Casualty Insurance Co.*, 791 A.2d 1216 (Pa.Super.2002).

¶ 2 The decisions in *Erie Insurance Exchange v. Transamerica Insurance Co.*, 516 Pa. 574, 533 A.2d 1363 (1987), and *Belser, supra*, do not compel a different result. In the former case, our Supreme Court concluded that a three-year-old child who inadvertently set a car in motion was not "using" the car. In *Belser*, we held that a person who was directing a truck with hand motions was not "using" the truck. Both decisions are logical in that in neither case was the person in question employing the vehicle for its intended purpose.

¶ 3 I cannot agree with the majority's assessment that "both parties present compelling and reasonable constructions of the term 'use,'" rendering that term ambiguous. Majority opinion at 1273. The issue is whether Appellant was using a car in which she was a passenger and which was being driven by her brother, a licensed driver. As we held in *Cummings, supra*, both drivers and passengers "use" cars in the plain and ordinary sense of the word. Appellant was using the car because she was employing it for its intended purpose, transportation.

¶ 4 Furthermore, Appellee did not collect any premiums with respect to the use of the car in question. In light of this fact, I believe that the Supreme Court's language in *Burstein v. Prudential Property and Casualty Insurance Co.* 570 Pa. 177, 185, 809 A.2d 204, 208 (2002) (footnote omitted), wherein it upheld the validity of the exclusion under examination, is implicated:

Here, voiding the exclusion would frustrate the public policy concern for the increasing costs of automobile insurance, as the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure. Most significantly, if this Court were to void the exclusion, insureds would be empowered to regularly drive an infinite number of non-owned vehicles, and receive *gratis* UIM coverage on all of those vehicles if they merely purchase UIM coverage on one owned vehicle. The same would be true even if the insureds never disclose any of the regularly used, non-owned vehicles to the insurers, as is the case here. Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent. Such result is untenable.

¶ 5 Instantly, the risk of injury stemmed from the vehicle owned by Appellant's mother, Tina Yoder, and not a vehicle owned by Appellant's father, David Lowry. It is unfair to permit the benefits of Mr. Lowry's insurance policy to follow his daughter without proper compensation to

his insurer, Appellee herein. *Id.* The majority has allowed Ms. Yoder's vehicle to be added to the obligation of Mr. Lowry's insurer without compensation. This practice is not permitted under our Supreme Court's decision in *Burstein.* Thus, I would affirm.