J. A12037/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONNA MARIE WILLIAMSON, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF JOHN P. WILLIAMSON, JR., | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY AND LIBERTY MUTUAL INSURANCE, T/D/B/A LIBERTY MUTUAL GROUP | : : : : : | No. 2629 EDA 2017 |

Appeal from the Judgment Entered September 21, 2017,
in the Court of Common Pleas of Delaware County
Civil Division at No. 13-000742

BEFORE:  BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED OCTOBER 10, 2018**

Donna Marie Williamson, individually and as Administratrix of the Estate of John P. Williamson, Jr. (hereinafter, "decedent"), appeals from the September 21, 2017 judgment entered in favor of appellees, Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance, t/d/b/a Liberty Mutual Group (collectively, "Liberty Mutual"), following the denial of appellant's post-trial motions.[1]  After careful review, we affirm.

---

[1] Appellant purports to appeal from the trial court's July 24, 2017 order denying her post-trial motions; however, "an appeal properly lies from the entry of judgment, not from the denial of post-trial motions." ***Commonwealth Fin. Sys., Inc. v. Smith***, 15 A.3d 492, 493 n.1 (Pa.Super. 2011) (citations omitted).  We have amended the caption accordingly.

The trial court summarized the relevant facts and procedural history of this case as follows:

> This action was commenced by summons on January 24, 2013. [Appellant] filed [her] complaint on February 25, 2015. It was averred that on January 25, 2009, [decedent] was a passenger in a motor vehicle owned by John P. Williamson, Sr. and operated by Andrew Cardamone[,] which was involved in a single vehicle accident in Williamsport, Pennsylvania that resulted in the death of [decedent] and fellow passenger Ian Alexander. The accident caused personal injury to three other passengers in the vehicle. It is averred that the accident was caused solely by the carelessness and negligence of Andrew Cardamone. [Appellant] was insured continuously under an automobile policy of Liberty Mutual since 1982. At the time of the accident, Liberty Mutual had an automobile policy [that] provided John P. Williamson, Sr. $500,000.00 in single limit coverage and $1,000,000.00 in umbrella coverage. Andrew Cardamone had a separate policy issued by Liberty Mutual with a $300,000 limit. Total available coverages amounted to total $1,800,000.00. [Appellant] further averred that the automobile policy also provided uninsured and underinsured coverage in the amount of two million dollars. [Appellant] claimed that, based upon alleged misrepresentations by Liberty Mutual, [appellant] agreed to a settlement of $1,800,000.00 . . . , which was distributed $600,000.00 to the estate of Ian Alexander, $600,000.00 to the [decedent's] estate, with the remaining $600,000.00 divided among the three surviving passengers. [Appellant] averred that they had submitted an underinsured claim to Liberty Mutual but that the matter was unresolved. [Appellant] offered Liberty Mutual a $600,000.00 offset against the underinsured policy limits of $2,000,000.00. The complaint contained counts for loss of consortium (Count 1), wrongful death action (Count II) and survival action (Count III). Liberty Mutual responded with an answer and new matter filed on April 17, 2015. On December 29, 2015, the

Honorable Charles Burr, Senior Judge, entered an order denying [Liberty Mutual's] Motion for Summary Judgment without prejudice to resubmit after the close of discovery. The case was assigned to this Court in February, 2016 and was listed for trial for its June 13, 2016 through July 8, 2016 trial term. Oral argument on [Liberty Mutual's] Second Motion for Summary Judgment was conducted in court on July 21, 2016. That motion was denied on July 22, 2016 and trial was continued to February, 2017. This Court, on November 2, 2016, granted [Liberty Mutual's] Motion for Leave to Re-open Discovery and granted the parties an extension to complete any discovery including depositions in this proceeding. Trial remained scheduled for the Court's February 13, 2017 through March 10, 2017 term. On February 16, 2017, this Court denied [Liberty Mutual's] Third Motion for Summary Judgment. On that date, this Court also entered an Order that the motion of [Liberty Mutual] to compel the deposition of Donna Marie Williamson and Elizabeth Williamson was moot. Finally, this Court reviewed [Liberty Mutual's] Motion in Limine to Preclude [appellant's] Expert Testimony. The Court examined the motion with [appellant's] counsel and granted the motion to preclude expert testimony due to the representation of [appellant's] counsel that no expert would be produced at trial and due to the fact that [appellant] had missed the deadline for naming an expert in this Court's scheduling order, had ample opportunity to conduct discovery relative to an expert and did not produce an expert report. Trial was to commence February 21, 2017. [Appellant] was required to identify all expert trial witnesses at least eight weeks prior to the trial date, in accordance with this Court's Scheduling Order dated February 18, 2016. The parties appeared on February 21, 2017 but trial was continued due to [appellant's] request for a continuance for personal reasons. The parties were then given a new date certain for trial of March 7, 2017.

. . . .

At the commencement of trial on March 7, 2017, this Court approved [appellant's] request to file an Amended Complaint. Trial commenced with [appellant] seeking recovery for loss of consortium (Count I), wrongful death (Count II), survival (Count III), breach of contract (Count IV), bad faith (Count V) and deceit (Count VI). The parties stipulated that Count V and Count VI were withdrawn from [appellant's] Amended Complaint. Donna Marie Williamson and John P. Williamson, Sr. testified poignantly on behalf of [decedent]. The Williamsons were married for thirty-five years at the time of this Court's hearing. Together, they had three children: Elizabeth, age thirty-four, and son Daniel, age thirty-two at the time of trial. [Decedent], in January 2009, was age twenty-one and in his last semester at Drexel University pursuing a Bachelor of Science in Biology degree. Upon graduation, he planned to attend an eleven-month program at Hahnemann to pursue a bachelor's degree in nursing. Mrs. Williamson recounted her son's achievements in cross-country and track, in education and in extracurricular activities. [Decedent] was also a person of strong faith and organized and participated in many charitable endeavors. He was a member of a fraternity at Drexel University. On January 19, 2009, [decedent] called his mother and requested to borrow the family SUV (2002 Chevrolet Trailblazer) for visiting brother fraternities at other universities. Mrs. Williamson instructed [decedent] that neither he nor any of the boys could go near alcohol if they were going to use her car for that weekend. On Friday, January 23, 2009, [decedent] said goodbye, picked up the car and drove to Drexel and picked up five fraternity brothers. On January 25, 2009, two state troopers appeared at the Williamson household and informed the Williamsons that [decedent] had died in a one vehicle car accident in Jackson Township, Lycoming County.

Andrew Cardamone testified that he was a freshman in the Alpha Chi Rho fraternity at Drexel University in January of 2009. Andrew joined in the weekend trip with the decedent. Before leaving Philadelphia,

- 4 -

Andrew was aware of one certain stop, which would be at the founding chapter at Trinity College in Connecticut. Andrew did not know the owner of the automobile when the trip commenced, but noticed that [decedent] had picked everyone up at the fraternity house. The first stop was at the College of New Jersey in Princeton, New Jersey. After visiting campus for a couple of hours, the fraternity brothers continued on to Rutgers University in East Brunswick. The brothers then travelled to Trinity College in Connecticut, then Rensselaer Polytechnic Institute, then Worcester Polytechnic Institute and arrived at the State University of New York at Geneseo late Saturday afternoon or early Saturday evening. The companions decided to leave at one or two a.m. on Sunday morning for the Pennsylvania State University at State College, Pennsylvania. The companions had dinner and attended a social event at the local chapter before embarking at one a.m. Andrew Cardamone testified that all of the fraternity brothers discussed who would drive from Geneseo to Penn State and Andrew volunteered. He testified that he was sober and of sound mind when he was ready to depart. Andrew Cardamone testified that he had one or two beers at 10:00 p.m. and that they left around 1:00 a.m. During the trip to Penn State, the boys stopped and after the stop [decedent] occupied the front passenger seat and slept during the trip from Geneseo to State College. Prior to the accident, Andrew Cardamone had his window cracked slightly to help keep cold air on his face while all other passengers were asleep. Andrew testified that he remembered hitting rumble strips and waking up upside down and contacting 911. The state police accident report provides that the vehicle had drifted to the left and swerved across the roadway before coming into contact with a large rock facing. [Decedent] and a second passenger died in the accident.

John P. Williamson, Sr. started practicing law in May 1997. He has a general practice [that] specifically includes personal injury/auto accident cases. After the memorial services were completed for his son,

John P. Williamson, Sr. became involved in communications with Liberty Mutual involving personal injury claims for the three surviving passengers of the vehicle and for the two estates. The driver, Andrew Cardamone, had a $300,000.00 automobile policy through his parents for liability purposes. John P. Williamson, Sr. testified that he had 1.5 million dollars in coverage, consisting of $500,000.00 from his automobile policy and $1,000,000.00 from an umbrella policy. Liberty Mutual agreed to tender $1,800,000.00 for the loss and it was distributed $600,000.00 to [decedent's] estate, $600,000.00 to the estate of the other decedent passenger, and $600,000.00 among the three surviving passengers injured. A release was signed by all parties. The joint tortfeasor release signed by Donna Marie Williamson provided specifically: "By entering into this release, I am not relinquishing any claim that the estate may have for underinsured motorist benefits."

At the conclusion of the [appellant's] case, this Court granted [Liberty Mutual's] Motion for Non-Suit as to the count for loss of consortium and the counts for wrongful death and survival. Trial continued on the count for breach of contract/negligent misrepresentation claim.

Trooper Douglas Hoffman testified by video and the Pennsylvania State Police Crash Report was admitted into evidence. [Liberty Mutual] admitted into evidence the Williamson automobile and umbrella insurance policies. Liberty Mutual determined in its investigation that Andrew Cardamone was an authorized driver of the Williamson vehicle and provided the automobile liability and the umbrella liability coverage to the Williamson family.

Trial court opinion, 10/13/17 at 1-8 (citations omitted).

Following a two-day non-jury trial, the trial court entered a verdict on March 24, 2017, in favor of Liberty Mutual. On April 3, 2017, appellant filed

timely post-trial motions that were denied by the trial court on July 24, 2017.

Appellant filed a notice of appeal on August 14, 2017. On August 17, 2017, the trial court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Appellant filed a timely Pa.R.A.P. 1925(b) statement on September 5, 2017, raising 17 claims of error. (**See** Rule 1925(b) statement, 9/5/17 at ¶¶ 7-23.) On September 7, 2017, this court ordered appellant to **praecipe** the Delaware County Prothonotary to enter judgment in this matter. Judgment was ultimately entered in favor of Liberty Mutual on September 21, 2017.[2] Thereafter, on October 13, 2017, trial court filed a comprehensive 26-page Rule 1925(a) opinion.

Appellant raises the following issues for our review:

1. Whether the Court erred in finding that the driver, Andrew Cardamone, had a reasonable belief that he had permission to operate the Williamson vehicle when he never met, nor had any conversations with, Donna Marie Williamson or John P. Williamson, Sr., prior to the trip, and as such did not know or abide by the pre-trip conditions for permission to operate the vehicle imposed by Donna Marie Williamson[?]

---

[2] Pursuant to Pennsylvania Rule of Appellate Procedure 905, appellant's notice of appeal shall be treated as filed after the entry of judgment. **See** Pa.R.A.P. 905(a)(5) (stating, "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof[]"). This court has long recognized that "even though [an] appeal was filed prior to the entry of judgment, it is clear that jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment." **Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.**, 77 A.3d 1, 3 (Pa.Super. 2013).

2.    Whether the Court erred in finding that the driver, Andrew Cardamone, had a continuing reasonable belief that he had permission to operate the Williamson vehicle even as the driving conditions on the road trip changed and deteriorated dramatically[?]

3.    Whether the Court erred in finding that it was proper for [Liberty Mutual] to extend insurance coverage to the driver, Andrew Cardamone, through [a]ppellant's policy of insurance, against the will and desire of [a]ppellant[?]

Appellant's brief at 5.[3]

Our standard of review of a non-jury trial is well settled:

Our review in a nonjury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the nonjury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

***Berg v. Nationwide Mut. Ins. Co., Inc.***, ___ A.3d ___, 2018 WL 2682196,

at *3 (Pa.Super. 2018) (citation omitted).

---

[3] For the purposes of our review, we have elected to address appellant's first two claims simultaneously.

Appellant first argues that the trial court erred in concluding that Cardamone had a reasonable belief that he had permission to operate appellant's vehicle on the evening in question. (Appellant's brief at 5.) In support of this contention, appellant avers that the trial court disregarded the fact that Cardamore "never met nor spoke with [appellant] nor her husband, John P. Williamson, Sr., until after the accident, nor did he know of or abide by the pre-trip conditions for permission to operate the vehicle imposed by appellant." (***Id.*** at 10.) Appellant further argues that, given the fact that the driving conditions had deteriorated dramatically on the evening in question, Cardamone could not have had "a continuing reasonable belief that he had permission to operate [appellant's] vehicle[.]" (***Id.*** at 5, 10.) For the following reasons, we disagree.

"Part A" of appellant's automobile policy with Liberty Mutual extended liability coverage to any person using the insured's automobile, provided an exclusion did not apply. Specifically, the policy provided as follows:

INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident . . . .

B. "Insured" as used in this Part means:

. . . .

2. Any person using "your covered auto[.]"

EXCLUSIONS

A.    We do not provide Liability Coverage for any
      person:

. . . .

8.    Using a vehicle without a
      reasonable belief that the person is
      entitled to do so[.]

Defense trial exhibit D-1.

Here, the trial court found that "Cardamone[] did have a reasonable belief that he had permission to operate the vehicle and the weight of the evidence supports this conclusion."  (Trial court opinion, 10/13/17 at 17.) Viewing the evidence and all reasonable inferences therefrom in a light most favorable to Liberty Mutual, the verdict winner, we find that the record amply supports the trial court's determination.  At trial, Cardamone testified that the group discussed alternating designated drivers during the trip and agreed that he would be the designated driver from Geneseo College to the Pennsylvania State University in State College, Pennsylvania.  (Notes of testimony, 3/7/17 at 102.)  Decedent was present during this conversation and did not object to Cardamone driving appellant's vehicle for this leg of the trip.  (**Id.** at 102-103, 107.)  The record further reflects that Cardamone explicitly indicated that he possessed a reasonable belief that he was entitled to operate appellant's vehicle on the evening in question:

Q.    Now do you remember me asking this question
      at your deposition?

. . . .

> Q. I asked, "So it was your belief that you had the right to use the vehicle?" And there was an objection. You said, "I don't know about a right." [Then I asked,] "But did you have a belief that you were entitled to use the vehicle?" And you said "yes, I was. It was my understanding that I had the opportunity, if it was needed, to drive the car. That I would be able to. Yes. Okay. So you say that you had a reasonable belief that you were entitled to use the vehicle? Objection. Yes, I believe I was allowed to use the car without getting specific permission from [Decedent] because we all had, in my opinion, my understanding at the time, Blanket approval to use the care because we were changing positions." Is that accurate?
>
> A. Yes.

*Id.* at 103-104.

Moreover, our review reveals that Cardamone's operation of the vehicle did not deviate from his permitted scope of operation. Cardamone continued to operate the vehicle from the time the group departed Geneseo College until the time of the accident, and reiterated on redirect examination that, he "based [his] assumption of permission [] on the fact that other people had . . . driven earlier in that day and that it was -- if it was my turn then it was -- I was allowed to do that." (*Id.* at 110). Additionally, Cardamone's blood alcohol content was 0.00 when tested by police following the accident, and State Trooper Douglass Hoffman indicated that he was cooperative, did not exhibit any signs of intoxication, nor smell of alcohol. (*Id.* at 103; *see also* notes of testimony, 3/1/17 at 13-14.)

Here, the trial court found the testimony of Cardamone credible and elected not to believe appellant's version of the events. "It is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgment for that of the fact-finder." *Zimmerman v. Harleysville Mut. Ins. Co.*, 860 A.2d 167, 172 (Pa.Super. 2004) (citation omitted), *appeal denied*, 881 A.2d 820 (Pa. 2005). Accordingly, we discern no abuse of the trial court's discretion.

Appellant next argues that the trial court "erred in finding that it was proper for [Liberty Mutual] to extend insurance coverage to the driver, [Cardamone], through [a]ppellant's policy of insurance, against the will and desire of [a]ppellant." (Appellant's brief at 5.) Appellant maintains that "Cardamone has his own Liberty Mutual insurance policy and all the injured parties had their own UIM[4] policies," and that she should have been permitted to make a claim under her own policy's UM[5]/UIM coverage in the amount of $2,000,000. (*Id.* at 10, 18.)

Preliminarily, we note that,

> [t]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, a court is required to give effect to that language. When a provision in a policy is ambiguous, however, the policy is to be

---

[4] UIM is an abbreviation for "underinsured motorist."

[5] UM is an abbreviation for "uninsured motorist."

> construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. Finally, [i]n determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts[,] in interpreting a contract, do not assume that its language was chosen carelessly. Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

***Erie Ins. Exch. v. E.L.***, 941 A.2d 1270, 1273 (Pa.Super. 2008), ***appeal denied***, 956 A.2d 435 (Pa. 2008) (citations omitted).

Upon review, we find that appellant has waived her UM/UIM claim by failing to properly develop it in her appellate brief. Specifically, the "Argument" section of appellant's brief is largely comprised of a number of bullet points and hypothetical questions, and does not contain a separate subsection that develops her UM/UIM claim with citation to relevant legal authority and corresponding analysis. Notably, appellant's entire "Argument" section contains only two scant references to case law and not a single citation to the notes of testimony or certified record. (***See*** appellant's brief at 11-21.) "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***McEwing v. Lititz Mut. Ins. Co.***, 77 A.3d 639, 647 (Pa.Super. 2013) (citation omitted); ***see also*** Pa.R.A.P. 2119(b) (compels a finding of waiver "where an appellate

brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review [.]"). Accordingly, we conclude that appellant's third issue is waived.

In any event, even if appellant did not waive her UM/UIM claim, it would still not merit relief. We agree with the trial court's well-reasoned conclusion that UM/UIM coverage does not apply. As the trial court properly reasoned in its opinion, all coverage applicable to the accident had been exhausted and appellant's argument fundamentally misconstrues Liberty Mutual's liability policy:

> The automobile involved in this proceeding was insured and liability coverage was afforded. In addition, the driver, [] Cardamone, also had insurance and that policy was provided for damages. In addition, the policy states that "uninsured motor vehicle" does not include any vehicle that is owned by "you" and that the term "you" refers to the named insured as well as the spouse of the named insured, if they are residents of the same household. Mr. and Mrs. Williamson are residents of the same household.

> The terms of [appellant's] automobile policy expressly precluded underinsurance coverage when liability coverage had already been extended. Exhibit D-1. As such, underinsured motorist benefits could also not be recovered under that policy. The language in the policy states that a vehicle covered by liability under the policy cannot be an underinsured vehicle.

Trial court opinion, 10/13/17 at 15-16 (case citation omitted).

Thus, if we were to accept appellant's contention that Cardamone did not possess a reasonable belief that he had permission to operate appellant's vehicle, appellant would not have been entitled to collect UM/UIM coverage

under its policies with Liberty Mutual because Cardamone would not qualify as an "insured" and there would have existed no "underlying coverage." (***See*** Liberty Mutual Auto Policy, "Exclusions" at 2, § A.8 and Liberty Mutual Personal Liability Protection Policy, "Exclusions" at 4, § II.e; defense trial exhibits D-1, D-2.) Additionally, an underinsured vehicle under the policy specifically precludes any vehicle for which liability coverage is provided. Here, because Cardamone was a permissive user of the vehicle and the Estate received coverage under the liability provisions of the policy, the vehicle cannot be an underinsured vehicle. Based on the foregoing, we find that even if appellant had not waived her claim, she would not be entitled to relief.

Having determined that the trial court's findings are supported by competent evidence and that appellant failed to demonstrate that the trial court committed error in application of the law, we affirm the September 21, 2017 judgment entered in favor of Liberty Mutual.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/10/18</u>